The STATE of Ohio, Appellee,

v.

CLIFTON, Appellant.

[Cite as *State v. Clifton* (1989), 65 Ohio App.3d 117.]

Court of Appeals of Ohio,
Clermont County.

No. CA89-01-004.

Decided Oct. 23, 1989.

*Donald W. White,* Prosecuting Attorney, and *Timothy E. Schneider,* for appellee.

*R. Daniel Hannon,* Clermont County Public Defender, and *Gary A. Rosenhoffer,* for appellant.

*Per Curiam.*

On July 12, 1988, defendant-appellant, Daniel W. Clifton, was indicted by the Clermont County Grand Jury on a charge of theft by deception in violation of R.C. 2913.02(A)(3). Appellant entered a not guilty plea and the court appointed counsel for him.

Appellant worked as a laborer. On December 20, 1985, he injured his back while on the job and filed a workers' compensation claim in January 1986. Appellant started receiving workers' compensation benefits in March 1986.

On January 14, 1986, appellant and his wife met with Wilma Swope of the Clermont County Department of Human Services. At this meeting, appellant, who was unemployed, requested that he be added to his wife's case file in order to increase the benefits under Aid to Dependent Children ("ADC") and food stamps the family would qualify to receive. Swope reviewed both applications with appellant explaining the rights, duties, and obligations imposed upon him as an applicant. Appellant was asked whether he was receiving any outside income. Swope explained that such income would jeopardize appellant's ability to legally receive ADC benefits and food stamps. Appellant certified he had no outside income and signed the applications.

On July 10, 1986, appellant and his wife had a redetermination interview with Madaline Galoway of the Clermont County Department of Human

Services. Appellant once again denied receiving any form of outside income and certified the same by signing the ADC and food stamp applications.

However, during this interview, Galoway informed appellant that evidence indicated he was receiving outside income in the form of workers' compensation. Even so, appellant maintained he had no other income. In September 1986, further evidence in the form of a "tracking sheet" verified that appellant was receiving outside income and Galoway sent appellant a letter communicating these facts and advising him of possible consequences.

In December 1986, Galoway finally issued a notice terminating ADC and food stamp benefits to appellant. However, it was not until January 1988 that an investigation of this apparent fraud was commenced by the Clermont County Department of Human Services. In the course of the investigation, appellant admitted that he received workers' compensation during the period covering March 1, 1986 to December 31, 1986.

A trial was held before the Clermont County Court of Common Pleas on December 19, 1988. The court found appellant guilty of a fourth degree felony of theft by deception. Appellant received a suspended sentence and was placed on five years' probation. The suspended sentence required appellant to serve sixty days in the Clermont County Jail, pay the costs of prosecution as well as restitution in the sum of $7,176.

Appellant timely filed the present appeal setting forth the following assignments of error:

First Assignment of Error:

"The guilty finding by the trial court is against the manifest weight of the evidence."

Second Assignment of Error:

"The finding of guilty to felony theft by the trial court is contrary to law."

Third Assignment of Error:

"The finding of guilty of felony theft is contrary to law in that State and its agents consented to any (purported) illegal conduct of Appellant."

Fourth Assignment of Error:

"The trial court erred in imposing sentence for felony theft and in establishing the amount of restitution."

Fifth Assignment of Error:

"The trial court erred in allowing the admission of business records (States Exhibit 11) into evidence."

■ Appellant's first and second assignments of error are interrelated and will therefore be addressed together. In essence, appellant contends that the court's verdict was against the manifest weight of the evidence. In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Otten* (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009–1010.

However, a reviewing court will not reverse a conviction where there is substantial evidence upon which the court could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt. *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus.

■ In the case *sub judice*, appellant was charged with violating R.C. 2913.02(A)(3), which provides:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

" * * *

"(3) By deception[.]"

Appellant argues pursuant to our decision in *State v. Helferich* (Apr. 20, 1987), Clermont App. No. CA85–12–110, unreported, 1987 WL 4821, that the evidence at trial suffers from fatal defects which render the lower court's verdict particularly suspect. In *Helferich, supra,* we held that a jury question in a case of theft by deception does not present itself in the following scenario:

" * * * (1) no proof of any specific false or misleading representations made by appellant to the victim of the offense—an insurance company; (2) no proof that appellant *knew* any specific representations he made to the victim were false or misleading; (3) no proof that the victim relied on any of appellant's specific representations to its detriment in settling Now Rentals theft claim, and (4) no proof that appellant received any property of value from the victim as a result of any false or misleading representations he made." (Emphasis *sic.*) *Id.* at 5–6.

In the instant matter, appellant was shown to have certified in the ADC and food stamp applications that he had "no outside income." Further, at the time of each certification the caseworker clearly explained to appellant that the

existence of "other income" could jeopardize his welfare benefits. Apparently, appellant failed to disclose his workers' compensation income for approximately a ten-month period during which time he also received ADC monies and food stamps. Appellant would have been denied benefits if he had reported his outside income.

Therefore, our decision in *Helferich, supra,* is not dispositive in the present action. Clearly, the evidence presented at trial detailed appellant's knowing and false misrepresentations to the Clermont County Department of Human Services concerning "alternative sources of income." In addition, the victim, the Clermont County Department of Human Services, detrimentally relied on these falsehoods to pay out an increased welfare benefit to appellant and his family.

The record before this court indicates by proof beyond a reasonable doubt that appellant committed every element of the crime of theft by deception and the court properly overruled appellant's motion for an acquittal pursuant to Crim.R. 29. Appellant's first and second assignments of error are overruled.

■ In his third assignment of error, appellant attacks his theft conviction based on the apparent "consent" by the Clermont County Department of Human Services to keep paying him welfare benefits after the alleged fraud was detected. We do not find appellant's argument well taken.

The record reveals that the Clermont County Department of Human Services in September 1986 found that appellant was receiving outside income in the form of workers' compensation payments. However, it was not until January 1988 that appellant's welfare monies ceased by order of the Clermont County Department of Human Services. Appellant insists that the Clermont County Department of Human Services, by failing to cease welfare payments upon discovery of the alleged fraudulent misrepresentations in September 1986, consented to the apparent theft of welfare monies by appellant. As a result, it is argued that the conviction cannot stand.

We find that appellant incorrectly states the law concerning theft by deception, and misconstrues the case of *State v. Mehozonek* (1983), 8 Ohio App.3d 271, 8 OBR 364, 456 N.E.2d 1353. R.C. 2913.02(A)(3) is the theft provision appellant was charged with violating. It provides for criminal prosecution against an individual who deprives an owner of his rightful possession of property through deceptive or fraudulent means. Consent in this case is not an issue since appellant was clearly advised of his rights and obligations prior to applying for welfare benefits. In any event, the record fails to indicate that the Clermont County Department of Human Services did in any way "consent" to the theft of welfare monies by appellant.

The case of *Mehozonek, supra,* cited by appellant, is not relevant for our purposes since it concerns a theft violation pursuant to R.C. 2913.02(A)(1) and is factually distinguishable. The court in *Mehozonek, supra,* held that where an employer originates a "sting" to test the honesty of its own security guards by staging a series of mock thefts, and the security guards cooperate with the purported theft, the employer has consented to the removal of its property, and the security guards cannot be convicted of theft, in violation of R.C. 2913.02(A)(1).

The instant case is factually contrary since the Clermont County Department of Human Services did not originate the fraudulent scheme participated in by appellant. Further, the delay in terminating appellant's welfare benefits cannot constitute "consent" to theft, but may be cause to possibly reduce the amount of restitution owed. Appellant's third assignment of error is overruled.

Appellant's fourth assignment of error takes issue with the amount of restitution established by the trial court.

The court below ordered appellant to pay restitution to the Clermont County Department of Human Services in the amount of $7,176. Appellant contends that his fourth degree felony theft conviction renders the restitution order patently inconsistent since a fourth degree theft is for theft of property having a value between $300 and $5,000.

In pertinent part, R.C. 2929.11 provides:

"(E) * * * The court * * * may require a person who is convicted of or pleads guilty to a felony to make restitution for all or part of the property damage that is caused by his offense and for all or part of the value of the property that is the subject of any theft offense, as defined in division (K) of section 2913.01 of the Revised Code, that the person committed. * * * "

Generally, the right to order restitution is limited to the actual damage or loss caused by the offense of which defendant is convicted. Implicit in this principle is that the amount claimed must be established to a reasonable degree of certainty before restitution can be ordered. *State v. Williams* (1986), 34 Ohio App.3d 33, 516 N.E.2d 1270, paragraph one of the syllabus.

The presentence report in the present case contained a figure of $7,176 earmarked for appellant's restitution. However, there was no finding as to the amount of theft committed by appellant in the above report or by the lower court. In fact, caseworker Galoway testified that the result of appellant's misrepresentations was an increase of $50 per month or $500 total, assuming a ten-month overpayment period from March 1986 until December

1986. In addition, the lower court found appellant guilty of a fourth degree theft which assumes a property value from $300 to $5,000.

Therefore, we find the restitution order *sub judice* cannot stand because the amount of restitution must bear a reasonable relationship to the loss suffered. In this light, the true economic loss must be ascertained on remand, taking into account that the Clermont County Department of Human Services cannot increase amounts properly owed through its failure to cease payments on discovery of a violation.

We find the trial court erred in ordering restitution in an amount which had not been determined to bear a reasonable relationship to the actual losses suffered. Accordingly, appellant's fourth assignment of error is well taken.

■ The final assignment of error maintains that the trial court's admission of welfare department food stamp records as a "business record" exception to the hearsay rule was improper and prejudicial. We disagree.

Evid.R. 803(6) provides, in pertinent part:

"A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. * * * "

Thus, for admission into evidence a "business record" must be transmitted by a person with knowledge of the subject matter and be kept in the regular course of business. In the case *sub judice*, the Clermont County Department of Human Services maintained computer printouts identifying the issuance of food stamps, complaints by recipients, and returns. Clearly, these records were kept in the regular course of business and compiled in compliance with the business record hearsay exception.

The primary question in this assigned error is whether the custodian of a business record must be "a person with knowledge" under Evid.R. 803(6). In *State v. Knox* (1984), 18 Ohio App.3d 36, 18 OBR 61, 480 N.E.2d 120, the court answered this question in the negative, quoting from the Senate Judiciary Committee on Fed.R.Evid. 803(6):

" 'It is the understanding of the committee that the use of the phrase "person with knowledge" *is not intended to imply that the party seeking to introduce the * * * data compilation must be able to produce, or even identify, the specific individual upon whose first-hand knowledge the * * ***

*data compilation was based.* A sufficient foundation for the introduction of such evidence will be laid if the party seeking to introduce the evidence is able to show that it was the regular practice of the activity to base such * * * data compilations upon a transmission from a person with knowledge, e.g., in the case of * * * a computer printout, upon a report from the company's computer programer [*sic* ] or one who has knowledge of the particular record system. *In short, the scope of the phrase "person with knowledge" is meant to be coterminous with the custodian of the evidence* or some other qualified witness. The committee believes this represents the desired rule in light of the complex nature of modern business organizations.' Senate Report No. 93–1277, Fed.R.Evid. 803(6), Title 28, U.S.Code, 274–275." (Emphasis added.) *Id.* at 37, 18 OBR at 62–63, 480 N.E.2d at 122.

Therefore, a custodian with knowledge of the particular record system in question provides a sufficient foundation for the introduction of "business record" evidence. In this instance, the testimony of Nancy Hanselman as custodian of the department's food stamp records properly authenticated the admitted evidence.

The decision to admit a business record into evidence pursuant to Evid.R. 803(6) rests within the sound discretion of the trial court and such decision will not be disturbed on appeal absent a clear showing of an abuse of discretion. *Cleveland v. Huff* (1984), 14 Ohio App.3d 207, 14 OBR 235, 470 N.E.2d 934; *National City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 2 OBR 57, 440 N.E.2d 590. Accordingly, we find in overruling appellant's final assignment of error that the court below did not abuse its discretion in allowing the admission into evidence of properly kept business records of the Clermont County Department of Human Services.

We hold consistent with this opinion that appellant's cause be reversed and remanded solely on the fourth assignment of error. The order of restitution is therefore to be set aside and the cause remanded for redetermination of the amount of restitution according to law.

The assignments of error properly before this court having been ruled upon as heretofore set forth, it is the order of the court that the judgment or final order herein appealed from be, and the same hereby is, affirmed in part and reversed in part and remanded for further proceedings not inconsistent with this decision.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

JONES, P.J., KOEHLER and WILLIAM W. YOUNG, JJ., concur.