The STATE of Ohio, Appellee,

v.

LUNA, Appellant.

[Cite as *State v. Luna* (1994), 94 Ohio App.3d 653.]

Court of Appeals of Ohio,
Huron County.

No. H–93–23.

Decided April 22, 1994.

*Russell V. Leffler,* Huron County Prosecuting Attorney, and *Gregory A. Shell,* Assistant Prosecuting Attorney, for appellee.

*Holly Bishop* and *Vincent F. Gonzalez,* for appellant.

ABOOD, Presiding Judge.

This is an appeal from a judgment of the Huron County Court of Common Pleas which found appellant Robert Luna guilty on one count of tampering with records, one count of securing writings by deception, and one count of theft by deception.

Appellant raises the following assignments of error on appeal:

"I. The trial court erred in finding defendant Robert Luna guilty of tampering with records, securing writings by deception and theft when the state failed to prove each element of each offense by proof beyond a reasonable doubt.

"A. The state failed to prove that Robert P. Luna knowingly or intentionally made a false statement with the intent to defraud.

· "B. The state failed to prove Luna tampered with a governmental record.

"C. The state failed to prove that Luna was deceptive in his answer, and that the deception caused another to execute a writing which disposed of his property.

"II. The court erred in allowing the case to proceed after appellant's motion to dismiss and for acquittal at each stage of the case.

"A. The court erred in denying the defendant's motion to dismiss at the close of the state's opening statement.

"B. The court erred in denying the appellant's motion for acquittal at the close of the state's case.

"III. The court erred in convicting defendant Robert P. Luna of theft, tampering with records and securing writings by deception based solely on his interest on a land installment contract.

"IV. The court erred in finding Robert Luna guilty of all three charges."

The facts that are relevant to the issues raised on appeal are as follows. On May 31, 1989, appellant signed his name on a land contract that was executed by Stanley and Eva Null as vendors, and appellant and his mother, Maria Luna, as vendees. On January 3, 1990, appellant reapplied for general assistance from the Huron County Human Services Department ("HCHS") and filled out a standard redetermination application form for himself and his household, which included his wife Estela, his children Paris, Londunn, Baltimore and Houston Luna, and an unborn child. On page twenty-two of the form appeared the question "Does anyone in your household own (or is anyone buying) any real estate?" Appellant checked the box for the answer "no." Thereafter the Luna family received ADC benefits.

On September 18, 1992, appellant was indicted on seven counts of tampering with records in violation of R.C. 2913.42(A)(1), one count of securing writings by deception in violation of R.C. 2913.43(A), and one count of grand theft in violation of R.C. 2913.02(A)(3). On April 21, 1993, the state moved to dismiss six of the seven counts of tampering with records and to amend the indictment. The court granted the motion, appellant waived his right to a jury trial and the case proceeded to trial to the court on April 22 and 23, 1993 on count two, tampering with records, count eight, securing writings by deception, and count nine, theft by deception.

At the conclusion of the state's opening statement appellant moved to dismiss and for judgment of acquittal on count two, tampering with records, and count eight, securing writings by deception, and the court denied appellant's motion.

The state then called witness Connie Hipp, of the Huron County Recorder's office, who testified that the land installment contract at issue had been recorded on June 2, 1989, and that a warranty deed that conveyed all title in the property to appellant's sons, Paris and Londunn Luna, had been executed on October 9, 1991.

The state also called Madeline Hahn, who stated that in January 1990 she was a caseworker with HCHS. She stated that at that time she spoke with appellant after he filled out the application to explain each question to him and verify his answers. She asked appellant whether he was buying a home or any property and he replied "no"; she also asked him if he was making any payments on any property and he replied "no." When asked, she stated that her definition of "buying" is making payments on something. She stated that no one in her department ever determined that appellant had made any payments on any property. She stated further that each applicant is told during this interview that he or she is responsible at all times for giving complete information and must report any changes to HCHS within ten working days. She explained that she witnessed appellant sign his name to the application after he had been informed of his responsibility to be complete and correct.

On cross-examination Hahn explained that the application provides information on the applicant's resources, which are verified and compared with the resource limits for eligibility. When asked what the limit for real estate was in 1990, she responded that for ADC the limit was $1,500. She explained, however, that it is possible to own property and still be eligible for ADC, food stamps and Medicaid pursuant to Ohio statutory law. She explained further that an applicant may own real estate and it is not counted as a resource if he lives on the property. She stated that she never determined what appellant's legal, monetary, or equitable interest was in the property in question. As to the question "Does anyone in your household own (or is anyone buying) any real estate?" she stated that the

terms "buying" and "own" are not defined anywhere on the application. When asked if the form provides for anything other than "ownership" or "buying," she responded that it did not. She stated that she does not know the difference between a land contract and a warranty deed and that when appellant stated that he had no property she never inquired beyond that.

On redirect examination, the state pointed out and Hahn admitted that there is a box provided for "other expenses" and any land contract payments could go under this section. Hahn agreed with the prosecutor's assertion that you cannot get an exemption for your land unless you declare that you have the land. Hahn stated that the applicant is, in fact, given a copy of his rights and reporting responsibilities in the initial interview.

The state then called Jeannie Singer, an income maintenance supervisor for HCHS, who testified that she authorizes eligibility for initial and reapplication requests for public assistance and that she conducts investigations into alleged fraud. She stated that she received appellant's case on June 10, 1992 because a complaint had come in that the local newspaper had published a transfer of land from Robert Luna to his sons Paris and Londunn Luna. She stated that she first checked the public assistance files and found no record of recorded property. She then obtained tax assessment cards which showed two parcels of property in the names of Paris and Londunn Luna with a combined value of $12,590. She stated that she obtained copies of the land installment contract and the warranty deed from the recorder's office and was instructed by her director to calculate the amount of overpayment that had been made.

She testified that her calculation showed that from January 1, 1990 to June 1, 1990, the Luna family was overpaid $3,288 in ADC cash, $2,388 in food stamps and $2,250.92 in Medicaid, for a total of $7,826.92. She explained that the effect that property ownership has on ADC benefit eligibility is that if an applicant lives on the property that he owns or is paying for, the value of the property is not considered a resource. If the applicant does not live on the property, however, Singer testified that:

" * * * I would ask you [the applicant] would you be interested in conditional eligibility for ADC and Medicaid, which is the medical card. You could get nine months worth of ADC cash and Medicaid if you agreed to sell the property, repay any assistance that was given to you during that nine month disposal time and not sell it for less than 90 percent of its fair market value during that time."

She stated further that with respect to food stamps she would ask the applicant if he ever had an intent to live on the property, and if he answered yes then it would not be included in the calculation of resources. When asked whether all these procedures were contingent on the applicant's reporting that he owns or is buying land, she responded, "Yes, it is."

On cross-examination she testified that on January 3, 1990, Stanley Null was still the owner of the property in question. She stated that she never determined whether appellant ever made any payments on the property and never determined what the value of the property was. She testified further that the property was never in the name of appellant Robert Luna. On recross-examination, she again admitted that she never determined what appellant's interest in the property was.

At the close of the state's case appellant made a Crim.R. 29(A) motion for acquittal, which the trial court denied as to all counts.

The defense then called appellant, who testified that he was a licensed real estate agent during the period from January 1, 1990 to June 1990, but he never sold any properties during that time. The only time he owned real estate was in 1987. It was a vacant lot in Willard, Ohio, and he reported it to the agency in 1987 when he applied for and received food stamps. He later exchanged the lot for repair work on his car. As to the question on page twenty-two of the January 3, 1990 application, he stated that at that time no one in his family owned or was purchasing real estate. When asked about May 31, 1989, the date he signed the land contract, he stated that his name was on the original land contract because he helps in taking care of all his mother's business and it was a matter of convenience, in case something happened to her. He stated that, in his mind, he was not purchasing the property, he had no interest in the property, and had no intent to own or buy the property. He stated that he negotiated the sale of the property for his mother and his brother, Ruben Luna, who paid $9,000 for it.

On cross-examination, appellant stated that when he signed the land contract he did not yet have his real estate license, although he was studying for his real estate licensure exam. Although he knew more about real estate in January 1990 when he answered "no" to the question on page twenty-two, he stated that at that time he did not know he had any interest in the property described in the land contract.

At the conclusion of the trial the court found appellant guilty on each of the three charges. On May 3, 1993, the trial court filed its written judgment entry, in which it found that once appellant falsely answered the question regarding real estate he nullified any duty HCHS had to inquire whether his interest in the property was the type that would disqualify him from receiving benefits. On June 4, 1993, appellant was sentenced to a definite term of imprisonment of one year for tampering with records, one year for securing writings by deception, and one year for theft by deception, to run concurrently. Appellant's sentence was then suspended and he was placed on probation for three years, provided, among other things, that he serve thirty days in jail and make restitution in the sum of

$5,438.92 to HCHS. Appellant filed a timely notice of appeal and his sentence was stayed pending these proceedings.

## I

This court will consider appellant's first and third assignments of error together, since appellant asserts in both that the evidence was insufficient to establish the essential elements of the offenses and, therefore, the convictions are against the manifest weight of the evidence. Specifically, appellant argues that (1) the state failed to show that he knowingly or intentionally made a false statement with the intent to defraud or that he tampered with a governmental record; (2) the state failed to prove that he was deceptive in his answer and that his deception caused another to execute a writing which disposed of property; and (3) the state never proved his legal interest in any real property and never calculated the effect that property ownership would have on his eligibility. Appellant asserts that his answer was truthful and correct since he did not "own" any real estate at the time he filled out the application and his name never appeared on a deed.

Appellee responds (1) that, given appellant's status as vendee on the land contract and his knowledge as a real estate agent, the trial court properly concluded he was not truthful in completing the application; (2) that the evidence proves that at the time he filled out the application appellant was a vendee on a land installment contract, that his answer was false and that, as a result, he was overpaid by more than $5,000 in benefits; and (3) that the evidence presented at trial was sufficient to sustain appellant's conviction of theft.

■ On review, this court may not reverse the judgment of the trial court as being against the manifest weight of the evidence if, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. It is not the appellate court's role to weigh the evidence or to judge the credibility of the witnesses. *State v. Clay* (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus.

## A

■ Appellant was convicted on one count of tampering with records in violation of R.C. 2913.42(A)(1), which states that "[n]o person, knowing he has no privilege to do so, and with purpose to defraud or knowing that he is facilitating a fraud, shall * * * [f]alsify * * * any writing, data, or record."

R.C. 2913.01(B) states that " '[d]efraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(A) defines "deception" to mean "knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact."

As to this offense, this court must determine if there was sufficient evidence presented from which the trial court could have found that appellant (1) falsified a writing that would be kept as a record by a governmental agency, (2) knowing he had no privilege to do so, and (3) with purpose to defraud or knowing he was facilitating a fraud. R.C. 2913.42(A) and (C)(2)(b).

A land installment contract is "an executory agreement * * * under which the vendor agrees to convey title in real property * * * to the vendee and the vendee agrees to pay the purchase price in installment payments." R.C. 5313.01(A). " 'Vendee' means the person who acquires an interest in property pursuant to a land installment contract, or any legal successor in interest to that person." R.C. 5313.01(D).

The question on page twenty-two of the application asked not only whether appellant owned any real estate, but also whether he was buying any, at the time he filled out the form. As set forth above, the evidence in this case shows that appellant was a vendee on the land contract and that he and his mother did execute a second document which nominated Paris and Londunn Luna to be grantees in the deed in general warranty contemplated in the land contract, that appellant had a general knowledge of real estate and was in the process of obtaining his real estate license when he executed the contract and had his license when he filled out the application for benefits, that appellant was aware of his duty to report his assets and any changes in his assets, and that appellant knew that the disclosure of his assets would determine his eligibility to receive benefits.

Upon consideration of the evidence presented at trial, the reasonable inferences therefrom and the law, this court finds that there was substantial, probative evidence presented from which a rational trier of fact could find beyond a reasonable doubt that appellant, knowing that he had no privilege to do so, made a false statement on a writing that would be kept as a record by a governmental agency, with the purpose to defraud or facilitate a fraud.

## B

■ Appellant was convicted on one count of securing writings by deception in violation of R.C. 2913.43(A), which states that "[n]o person, by deception, shall

cause another to execute any writing which disposes of or encumbers property, or by which a pecuniary obligation is incurred." The Legislative Service Commission comment to 1972 H.B. No. 511, which enacted R.C. 2913.43, stated that this section, subsection A of which has not changed, "is a restyled version of a former statute prohibiting obtaining a signature by false pretenses. It differs from the former section, however, in that it may involve instruments which dispose of or encumber property, as well as evidence of debt." Pursuant to R.C. 2901.04(A), which states that "[s]ections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused," R.C. 2913.43 should be construed narrowly in accordance with the Legislative Service Commission's summary, which contemplates that in this offense a person or entity loses his interest in the property or owes the money immediately after the writing is executed in reliance on the deception. See *State v. O'Neill* (Mar. 24, 1992), Franklin App. No. 91AP–369, unreported, 1992 WL 63308.

This court finds, therefore, that R.C. 2913.43 does not apply to penalize those who give inaccurate information to a lender; instead the statute is intended to penalize those who give inaccurate information to a person who then takes out a loan or incurs an encumbrance on his property in reliance upon the inaccurate information. *O'Neill, supra.* In this case, appellant's application contained inaccurate information, which HCHS, acting in essence as a lender, relied upon in determining eligibility for benefits. R.C. 2913.43 does not apply in this fact situation and appellant should not have been convicted of violating this statute.

## C

Appellant was convicted on one count of theft by deception in violation of R.C. 2913.02(A)(3), which states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception[.]" R.C. 2913.02(A)(3) necessarily requires some fraudulent conduct or false pretense by which the owner is deprived of property. *State v. Jacobozzi* (1983), 6 Ohio St.3d 59, 63, 6 OBR 103, 106–107, 451 N.E.2d 744, 747–748. Appellee argues that because of the deception appellant was entitled to nothing and, therefore, the amount of overpayment was equal to the entire amount of benefits received by appellant during the time in question. Appellee's contention is misplaced, however, since the relevant inquiry is rather what benefits did appellant receive as a result of the deception that he would not have received had he been truthful.

In this case, the state presented evidence as to the purchase price of the property, the procedure normally undertaken in determining if property ownership affects benefits, and the entire amount of benefits appellant received from

January 1, 1990 through June 1, 1990. Testimony also revealed, however, that HCHS never determined the value of the property for eligibility purposes, never established that appellant had made any payment on the property, never ascertained what effect ownership would have had on his benefits and never calculated the actual amount of benefits appellant had received as a result of the deception that was over and above what he would have received had he been truthful. Although appellant may have received excess benefits as a result of the deception, the record is devoid of any evidence showing that but for the alleged deceptive answer appellant would not have been entitled to benefits of a certain amount.

Upon consideration thereof, this court finds that the state failed to present substantial, probative evidence from which the trial court could find beyond a reasonable doubt that appellant, with purpose to deprive the owner, did knowingly obtain or exert control over the ADC benefits by deception.

In accordance with the foregoing, this court finds that appellant's first and third assignments of error are not well taken as to his conviction on the offense of tampering with records but are well taken as to his conviction on the offenses of securing writings by deception and theft by deception.

## II

Appellant argues, in his second assignment of error, that the trial court erred (1) in denying his motion to dismiss made immediately after the state's opening statement, and (2) in denying his motions for acquittal made at various stages of the proceedings. In light of our findings above as to appellant's first and third assignments of error, we will address this assignment of error only as it relates to the offense of tampering with records.

As to appellant's motion for judgment of acquittal at the close of the state's opening statement, a trial court should overrule such a motion if the state's opening statement indicates that the accused was charged with the offense for which he is being tried and there is no admission of fact by the prosecution that no offense was committed, or that the accused was not guilty of the offense charged. *State v. Karcher* (1951), 155 Ohio St. 253, 44 O.O. 258, 98 N.E.2d 308; *State v. Pumpelly* (1991), 77 Ohio App.3d 470, 478, 602 N.E.2d 714, 718–719; *State v. Scott* (1983), 8 Ohio App.3d 1, 3, 8 OBR 1, 3–4, 455 N.E.2d 1363, 1366–1367.

In this case, the prosecutor made the following remarks with respect to count two, tampering with records, during his opening statement:

"[T]he State is going to show Robert P. Luna signed a form at the Department of Human Services in front of the social worker, and in that form he verified that

what he signed was the truth, first of all, and, secondly, he went through the form, and on page 22 of that form is a question regarding property. Robert P. Luna read that question and checked the box that said no, stating that he had no real estate or was not in the process of buying any real estate.

"The State will also show that about seven months prior to signing that document Robert P. Luna entered into a land contract * * * to purchase property * * * with the knowledge that * * * he was to report that to the Department of Human Services."

█ A review of the entire opening statement, including the relevant portion above, reveals that it set forth that appellant was being tried for the offense on which he was charged and there were no admissions made showing that the offense was not committed or that appellant was not guilty. Upon consideration thereof, this court finds that the trial court properly denied appellant's motion for acquittal made at the close of the state's opening statements as to count two, tampering with records.

█ As to appellant's motion for acquittal made pursuant to Crim.R. 29(A), it is well established that "a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394; *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 9 O.O.3d 401, 381 N.E.2d 184. The reviewing court shall consider the evidence in a light most favorable to the appellee. *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Fyffe* (1990), 67 Ohio App.3d 608, 613, 588 N.E.2d 137, 140.

Upon consideration of all the evidence that was before the trial court, and as summarized above, this court finds that in accordance with our findings as to appellant's first and third assignments of error the trial court did not err in denying appellant's motions for acquittal with respect to the offense of tampering with records, made at various stages of the trial. Accordingly, appellant's second assignment of error is found not well taken.

### III

Appellant asserts, in his final assignment of error, that the offenses of which he was convicted are allied offenses of similar import and, therefore, the trial court erred in sentencing him on all three offenses. Upon consideration of our findings above, this court finds that this assignment of error is moot and, therefore, not well taken.

Upon consideration whereof, this court finds that substantial justice has not been done the party complaining and the judgment and sentence of the Huron

County Court of Common Pleas is hereby affirmed as to appellant's conviction on one count of tampering with records and reversed as to appellant's convictions on securing writings by deception and theft by deception. This case is hereby remanded to the trial court for further proceedings not inconsistent with this opinion. Court costs are to be divided equally between the parties.

*Judgment affirmed in part*
*and reversed in part.*

MELVIN L. RESNICK and SHERCK, JJ., concur.