[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 393.]

THE STATE OF OHIO, APPELLEE, *v.* EDMONDSON, APPELLANT.

[Cite as *State v. Edmondson*, 2001-Ohio-210.]

*Criminal law—Theft by deception—False information submitted by applicant for Aid to Dependent Children funds and food stamps who would have been eligible for benefits if she had been truthful on her application but in an amount less than she actually received—R.C. 2913.02, applied.*

(No. 00-1438—Submitted March 27, 2001—Decided July 25, 2001.)

CERTIFIED by the Court of Appeals for Montgomery County, No. 18061.

————————————

COOK, J.

{¶ 1} The appellant, Michelle Edmondson, was convicted on two counts of theft by deception for receiving government benefits after she submitted false information to the Montgomery County Department of Human Services ("MCDHS") on her benefits application. Had she been truthful on her application, Edmondson would have remained eligible for benefits, but in an amount less than she actually received. This case asks us to decide whether Edmondson has stolen the total amount of benefits that MCDHS gave her following the deception or only the amount exceeding what she would have been eligible to receive had she provided truthful information.

I

{¶ 2} During a four-year period between September 1990 and October 1994, Edmondson received nearly $13,000 in financial assistance from the Ohio Aid to Dependent Children ("ADC") program and food stamps from the federal government worth almost $9,000. The benefits received by Edmondson were the maximum amounts allotted under both the ADC and food stamp programs. At no time during this period did Edmondson inform the MCDHS, which administered

the distribution of benefits, that she was employed. Employment status is one of several factors affecting the amount of assistance available to an applicant for benefits.

{¶ 3} In 1994, MCDHS began to investigate whether Edmondson had been employed while receiving government assistance. Edmondson admitted to a welfare fraud investigator that she had worked at various jobs while collecting ADC funds and food stamps. She also acknowledged that she failed to report her employment to MCDHS despite being aware of her responsibility to report any employment she obtained.

{¶ 4} A grand jury indicted Edmondson on two counts of theft by deception in violation of R.C. 2913.02(A)(3). The first count alleged theft of ADC benefits valued at $5,000 or more. The second count charged Edmondson with theft of food stamps, also valued at $5,000 or more. Because the alleged value of the benefits stolen exceeded $5,000 (but was less than $100,000), each count charged the offense of grand theft, a fourth-degree felony. R.C. 2913.02(B)(2).

{¶ 5} Before trial, the parties stipulated that Edmondson collected government benefits between October 1990 and September 1994 without informing MCDHS of her employment during this period. As a result of the parties' stipulations, the case proceeded to a bench trial limited to determining the value of the benefits stolen by Edmondson. The prosecution contended that Edmondson stole the total amount of benefits she received after misrepresenting her employment status. In contrast, Edmondson contended that she could not be guilty of stealing the full amount of benefits because, by MCDHS's own admission, she would have been eligible for assistance (albeit in a lesser amount) even if she had reported her employment. Thus, Edmondson theorized that the dollar value of the theft was limited to the amount exceeding what she would have received had she truthfully reported her employment. The MCDHS calculated this "overpayment amount" to be $2,415 in ADC benefits and $2,211 in food stamps.

{¶ 6} The trial court agreed with Edmondson. It noted that Edmondson would have received substantial benefits even if she had been truthful on her application. The trial court therefore concluded that Edmondson "only received the benefit of" the overpayment amount as a result of the deception. And because the overpayment amount for both the ADC benefits and the food stamps was less than $5,000 (but greater than $500), the trial court found Edmondson guilty of two counts of fifth-degree felony theft, a lesser-included offense of grand theft. See R.C. 2913.02(B)(2).

{¶ 7} The state obtained leave to appeal the trial court's decision under R.C. 2945.67(A). The Second District Court of Appeals held that the trial court's legal analysis of the theft amount was incorrect. The court of appeals deemed it irrelevant for purposes of the theft statute that Edmondson would have been entitled to benefits even if she had truthfully reported her employment. Relying on its earlier decisions, the court reasoned that " 'the deception' is what 'triggers the offense' and all welfare benefits the defendant received after the 'initial misrepresentation' are to be included in the theft amount," quoting *State v. Chambers* (Sept. 28, 1982), Montgomery App. No. 7360, unreported. See, also, *State v. Crowder* (Feb. 10, 1995), Montgomery App. No. 14478, unreported, 1995 WL 58679. The court of appeals certified its decision as being in conflict with the judgment of the Sixth District Court of Appeals in *State v. Luna* (1994), 94 Ohio App.3d 653, 641 N.E.2d 747. The cause is now before this court upon our determination that a conflict exists.

II

{¶ 8} Before reaching the merits of Edmondson's appeal, we note that the procedural posture of this case presents an oddity: our decision has no practical effect on this appellant. Nevertheless, it is important to emphasize that jurisdiction in this court is proper.

{¶ 9} Because it rejected the legal conclusion reached by the trial court, the court of appeals originally reversed the trial court's judgment and remanded for further proceedings. The court of appeals later issued an amended entry in which it *affirmed* the trial court's judgment finding Edmondson guilty only of the lesser-included offenses. Edmondson therefore remained guilty of stealing only the "overpayment amount" as calculated by MCDHS. The court of appeals' correction of its judgment was necessary insofar as reversal and remand would have been a futile exercise; double-jeopardy principles barred the state from pursuing the grand theft charges because the trial court's finding of guilt on the lesser-included offenses operated as an acquittal of the greater offenses. See *Brown v. Ohio* (1977), 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187; see, also, *State v. Curry* (1991), 76 Ohio App.3d 175, 601 N.E.2d 176 (affirming judgment of acquittal because of double-jeopardy principles despite sustaining state's assignment of error in R.C. 2945.67[A] appeal). Thus, the court of appeals recognized that its decision could not affect Edmondson's conviction.

{¶ 10} Although the state's appeal had no effect on Edmondson's case, the court of appeals had the statutory authority to exercise jurisdiction over it. R.C. 2945.67(A) grants discretion to the courts of appeals to allow appeals by the state of a trial court's "substantive law rulings made in a criminal case which result in a judgment of acquittal so long as the judgment itself is not appealed." *State v. Bistricky* (1990), 51 Ohio St.3d 157, 555 N.E.2d 644, syllabus; see, also, *State v. Arnett* (1986), 22 Ohio St.3d 186, 22 OBR 272, 489 N.E.2d 284, syllabus. Although it was not *required* to do so, *State v. Fisher* (1988), 35 Ohio St.3d 22, 517 N.E.2d 911, the court of appeals exercised that discretion in this case by granting leave to the state to appeal the substantive legal issue concerning the amount of the theft. It then decided the question differently from the trial court. The court of appeals also resolved the issue differently from another appellate district,

4

prompting it (on Edmondson's motion) to certify the record to this court for review and final determination under Section 3(B)(4), Article IV of the Ohio Constitution.

{¶ 11} Though unusual, this procedural history poses no jurisdictional bar to our review. The court of appeals validly exercised jurisdiction over the state's appeal under R.C. 2945.67(A). *Bistricky* at syllabus. When its decision on the legal issue directly before it revealed an actual conflict between appellate judicial districts on a rule of law, the court of appeals properly certified the case to this court. *Whitelock v. Gilbane Bldg. Co.* (1993), 66 Ohio St.3d 594, 613 N.E.2d 1032, paragraph one of the syllabus. Accordingly, the case is properly before us based upon the certification of the Second District Court of Appeals.

III

{¶ 12} The elements of theft by deception appear at R.C. 2913.02, which provides:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"* * *

"(3) By deception."

{¶ 13} The parties do not dispute that the state proved these essential elements in Edmondson's case. Thus, there is no dispute that Edmondson knowingly obtained control over property (*viz*., ADC cash assistance and food stamps) with purpose to deprive MCDHS of it. Nor is there any dispute that Edmondson knowingly deceived MCDHS by misrepresenting her employment status. See R.C. 2913.01(A) (defining "deception" to include "any false or misleading representation * * * that creates, confirms, or perpetuates a false impression in another").

{¶ 14} The only dispute in this case involves the degree of theft offense Edmondson committed. R.C. 2913.02(B)(2) categorizes theft offenses into

5

different degrees depending on the value of the property or services stolen. Edmondson urges us to follow the trial court's conclusion that the value of the stolen ADC funds and food stamps is limited to the "overpayment amount" calculated by MCDHS.

{¶ 15} In support of her argument, Edmondson relies on *State v. Luna*, *supra*, the case certified as being in conflict with the court of appeals' decision in this case. In *Luna*, the trial court convicted a defendant of theft of ADC benefits by deception. On his benefits application, the defendant had falsely stated that he was neither an owner nor buyer of any real property; in fact, the defendant was the vendee on a land contract executed prior to his application for benefits. The state argued that the sum of benefits received was the product of theft. The court of appeals disagreed and explained that "the relevant inquiry is * * * what benefits did appellant receive as a result of the deception *that he would not have received had he been truthful*." (Emphasis added.) *Id.*, 94 Ohio App.3d at 662, 641 N.E.2d at 753. The court therefore concluded that the defendant could have stolen only the amount "over and above what he would have received had he been truthful." *Id.* at 663, 641 N.E.2d at 753.

{¶ 16} We disagree with the legal theory advanced by Edmondson and the *Luna* court and instead endorse the conclusion reached by the Second District Court of Appeals. Edmondson's argument that she stole only the "overpayment amount" relies upon the premise that she owned or possessed (and therefore did not steal) the non-overpayment portion of the benefits she received. But this premise is incorrect. Edmondson was not entitled to *any* benefits until MCDHS actually determined her eligibility based on the information disclosed on her application. See R.C. 5107.12; see, also, Ohio Adm.Code 5101:1-2-10(D)(2) (an applicant's failure to provide necessary information during the application process "shall result in a denial" of benefits). The benefits remained government property until they were actually paid to Edmondson. See R.C. 5101.54(B) ("food stamps * * * are

the property of the department of job and family services from the time they are received * * * by the department from the federal agency responsible for such delivery until they are received by a household entitled to receive them"); see, also, former R.C. 5107.01, 146 Ohio Laws, Part IV, 6935, 6950 (noting that ADC payments are made from state and federal funds). When Edmondson actually obtained the benefits from MCDHS, she received them only because MCDHS deemed her eligible for government assistance based on the materially false information she provided. Because Edmondson did not own any benefits until she received them, her deception taints all of the ADC funds and food stamps that MCDHS gave to her based on her materially false application. We reject Edmondson's view to the contrary, as it requires us to indulge in the legal fiction that Edmondson somehow owned a portion of the benefits before she even received them.

{¶ 17} In contrast to the rule advocated by Edmondson, the court of appeals' decision in this case comports with the statutory elements of theft by deception. R.C. 2913.02(A)(3) imposes criminal liability against a person "who deprives an owner of his rightful possession of property through deceptive or fraudulent means." *State v. Clifton* (1989), 65 Ohio App.3d 117, 122, 583 N.E.2d 326, 329; see, also, *State v. Talley* (1983), 94 N.J. 385, 390-391, 466 A.2d 78, 81 (the essential nature of all theft offenses is the " 'involuntary transfer of property,' " either " 'without [the victim's] consent or with consent obtained by fraud or coercion,' " quoting from the Final Report of the New Jersey Criminal Law Revision Commission, Vol. II: Commentary [1971] 216, Section 2C:20-2). The state must prove that the accused engaged in a deceptive act to deprive the owner of possession of property or services. The state must also prove that the accused's misrepresentation (or other conduct creating a false impression) actually caused the victim to transfer property to the accused. *Clifton*, 65 Ohio App.3d at 121-122, 583 N.E.2d at 328-329; see, also, *State v. Graven* (1978), 54 Ohio St.2d 114, 126-127,

8 O.O.3d 113, 120, 374 N.E.2d 1370, 1377-1378 (W. Brown, J., dissenting); *Williams v. State* (1908), 77 Ohio St. 468, 83 N.E. 802, syllabus; 2 LaFave & Scott, Substantive Criminal Law (1986) 391-392, Section 8.7(c). Finally, if the state seeks a conviction for grand theft, R.C. 2913.02(B) requires proof that the accused wrongfully obtained property or services valued at $5,000 or more. See *State v. Henderson* (1979), 58 Ohio St.2d 171, 173-174, 12 O.O.3d 177, 178, 389 N.E.2d 494, 495 (factor that enhances the degree of theft offense is an element that the state must prove beyond a reasonable doubt).

{¶ 18} The straightforward application of these elements supports the state's legal theory and undermines Edmondson's position. Edmondson obtained benefits only after she failed to be truthful about her employment status. In turn, MCDHS relied on the information Edmondson provided when it approved her benefits application and awarded over $5,000 in ADC funds and food stamps before learning of Edmondson's deception. The state does not have to prove the additional fact, as Edmondson's rule would require, that the accused obtained benefits for which he or she was not otherwise eligible absent the deception. See *State v. Robins* (1995), 233 Conn. 527, 530-531, 660 A.2d 738, 739 (interpreting Connecticut's larceny statute as requiring state to prove only that defendant obtained benefits by filing false claim and not the additional element that defendant obtained benefits to which he was not entitled). Imposing this additional burden on the state would add an element that does not appear in the theft statute.

{¶ 19} Moreover, the rule advocated by Edmondson would potentially invite mischief. Recipients could provide false information to enhance their level of benefits knowing that the overpayment amount was the maximum for which they could be held criminally responsible if the authorities detected the deception.

{¶ 20} The court of appeals correctly rejected Edmondson's claim that she stole only the "overpayment amount." The correct valuation of the benefits stolen

is the entire amount Edmondson received following her deception. We accordingly affirm the judgment of the court of appeals.

*Judgment affirmed.*

MOYER, C.J., and F.E. SWEENEY, J., concur.

DOUGLAS, J., concurs in judgment.

RESNICK, PFEIFER and LUNDBERG STRATTON, JJ., dissent.

———————————

**PFEIFER, J., dissenting**.

{¶ 21} Edmondson was entitled to a certain amount of welfare benefits. She provided false information and received welfare benefits in excess of the amount to which she was entitled. The state prosecuted her for theft by deception of the entire amount she received, which includes the amount to which she was entitled.

{¶ 22} Unlike the majority, I would rather engage in a legal fiction, that entitlement is a form of ownership, than embrace the absurd. The theft offense should be based on the difference between her entitlement and what she actually received. To do otherwise is ridiculous.

{¶ 23} The majority is concerned about the potential "mischief" of welfare recipients receiving more benefits than they are entitled to. The possibility that people otherwise entitled to benefits might be too frightened to pursue them and the possibility that the state might overreach in prosecuting these cases is more troubling. Surely the state has more pressing business than prosecuting our society's most downtrodden for receiving benefits to which they are entitled. I dissent.

RESNICK, J., concurs in the foregoing dissenting opinion.

———————————

**LUNDBERG STRATTON, J., dissenting.**

{¶ 24} I respectfully dissent from the majority's decision to affirm the judgment of the court of appeals.

{¶ 25} In this case, the parties stipulated to the elements of theft by deception. The only issue in dispute is the value of the property that the defendant stole. The majority holds that the value of the property stolen is the entire amount of benefits received. I respectfully disagree.

{¶ 26} The theft-by-deception statute, R.C. 2913.02(A)(3), provides, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception." R.C. 2913.02(B)(2) sets forth the degree of the theft offense based on the value of the property stolen. Nowhere in the plain language of the theft statute is a government assistance recipient required to forfeit the portion of the benefits to which he or she is legally entitled.

{¶ 27} Nor do any Department of Human Services regulations require *repayment* of benefits to which the defendant *is entitled*. Ohio Adm.Code 5101:6-20-01(B) provides, "An individual *may* be disqualified from OWF [Ohio Works First], PRC [Prevention, Retention, and Contingency Program], and/or food stamp programs for intentional program violations." (Emphasis added.) Further, Ohio Adm.Code 5101:6-20-03(A)(1) requires repayment of the "fraudulent assistance" before restoration to the program. Thus, even the Department of Human Services regulations do not require that all benefits be repaid.

{¶ 28} Instead of the majority's interpretation, I would adopt the reasoning of *State v. Luna* (1994), 94 Ohio App.3d 653, 641 N.E.2d 747, the case with which *Edmondson* is in conflict. *Luna* held that the relevant inquiry is what benefits the defendant would have obtained had he or she been truthful. *Luna*, 94 Ohio App.3d at 662, 641 N.E.2d at 753. In *Luna*, a government assistance applicant was convicted of theft by deception and other crimes. The court held, "Although appellant may have received excess benefits as a result of the deception, the record is devoid of any evidence showing that but for the alleged deceptive answer

appellant would not have been entitled to benefits of a certain amount." *Id.* at 663, 641 N.E.2d at 753-754.

{¶ 29} In other theft cases, we do not measure the amount of the theft as the majority does in this case. For example, suppose an employee works eight hours one day but by deception convinces the employer that he or she worked ten hours and, consequently, the employer pays the employee for ten hours of work. We would find the employee guilty of theft for only the two hours of pay that he or she obtained fraudulently. The law does not require the employee to forfeit all wages to which he or she is entitled. I fail to see why this case should be any different.

{¶ 30} Therefore, I would hold that in a prosecution of theft of government benefits by deception, the value of property for purposes of determining the seriousness of the crime under R.C. 2913.02(B)(2) is the amount of benefits received as a result of the deception rather than the sum of all benefits received.

{¶ 31} I do not believe that this interpretation of the law would encourage government assistance recipients to lie in order to obtain benefits to which they are not otherwise entitled. Contrary to the majority's contention, serious penalties do attach in addition to a criminal charge and possible prison. The defendant becomes ineligible for further assistance until repayment, hardly an incentive for mischief as claimed by the majority.

{¶ 32} In this case, the defendant received $12,829 in Aid to Dependent Children ("ADC") benefits, an overpayment of $2,415, and $8,836 in food stamps, an overpayment of $2,211. She would have received $17,039 in ADC and food stamps even when taking her wages into consideration. In my view, the law requires us to allow her to keep that to which she is legally entitled, for we are not seeking to punish qualified recipients *or their children,* for whom government assistance provides a means to obtain essential food, clothing, housing, and medical care. See *Goldberg v. Kelly* (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287.

**{¶ 33}** Nowhere else in Ohio law do we penalize defendants charged with theft by requiring them to repay *more* than they stole. I agree with the trial court that defendant would have still received substantial ADC and food stamp benefits had she truthfully reported her employment status. Therefore, in calculating the theft amount, the defendant should be criminally liable for only the $4,626 in benefits she received because of her deception, an amount warranting a fifth-degree felony conviction. Accordingly, I respectfully dissent and would reverse the judgment of the court of appeals.

RESNICK, J., concurs in the foregoing dissenting opinion.

_____

*Mathias H. Heck, Jr.,* Montgomery County Prosecuting Attorney, and *Kirsten A. Davies,* Assistant Prosecuting Attorney, for appellee.

*Arvin S. Miller*, Montgomery County Assistant Public Defender, for appellant.

_____