OPINION
{¶ 1} Brett Carson, Jr. appeals from his conviction of aggravated vehicular homicide in the Greene County Common Pleas Court pursuant to his no contest plea.
 {¶ 2} Carson contends that his conviction should be reversed because his lawyer was not permitted to withdraw from representing him, because he did not knowingly and intelligently enter his no contest plea, and because the trial court failed to have him evaluated for competency prior to his plea. He also contends the trial court improperly ordered him to make restitution without a basis for doing so.
 {¶ 3} Carson was indicted on May 4, 2000, and the original trial date was set for July 24, 2000. Four days before the trial date, Carson's counsel moved for a continuance which was granted by the trial court. The trial was continued until October 16, 2000. On September 18th, defense counsel again moved to continue the trial, and the trial was continued to March 19, 2001.
 {¶ 4} On March 12, 2001, defense counsel Daniel O'Brien moved to withdraw as counsel for Carson and moved the court to conduct a mental evaluation of Carson. The following was the memorandum filed in support of the motion.
 {¶ 5} "Recent actions of and conversations with Defendant have led Defense Counsel to question the mental competency of this Defendant. Defendant displays erratic, irresponsible behavior toward his defense and often fails to respond to important, specific requests by this office.
 {¶ 6} "Defendant advised Defense Counsel, via a sudden, unannounced appearance at this office on Friday, March 9, 2001, that he has vascular surgery for both his legs scheduled on Friday, March 16, 2001. According to Defendant the Doctor has advised him that this surgery will keep immobile for 8 — 10 weeks.
 {¶ 7} "Defendant was advised by Defense Counsel and was fully aware prior to making this appointment that his Trial is set to begin on Monday, March 19, 2001. Defendant did not provide any proof of this surgery other than his oral statement that such a surgery was scheduled.
 {¶ 8} "Defense Counselors have scheduled several private psychological evaluations for Defendant, feeling such evaluation was necessary based upon certain confidential items Defendant shared with Defense Counsel. Defendant has missed all scheduled appointments despite seeming to be in agreement with their necessity.
 {¶ 9} "Defendant has led Defense Counsel to believe that he is seeking and receiving outside mental treatment but to date has failed to provide names of Doctors and/or medical records or evaluations to this office.
 {¶ 10} "Defendant fails to meet all scheduled appointments, return phone calls or respond to mail. He instead randomly appears at unannounced times in the office, sometimes merely sitting on the couch without asking any questions of anyone and leaving twenty (20) minutes later. During some of the unannounced visits Defendant indicates that he has just opened mail from this office received by him over one (1) month prior.
 {¶ 11} "Defendant has failed to cooperate with experts provided by Defense Counsel to assist with the defense of his case, consistently failing to meet with these experts during scheduled appointment times.
 {¶ 12} "Counselors for Defendant state that they have attempted to defend Mr. Carson to their fullest capabilities. A plan of defense which required participation by this Defendant was discussed and agreed upon by Defendant. Defendant has failed to follow through with his responsibilities, often letting long periods of time go by without maintaining contact with his attorneys.
 {¶ 13} "Defendant has had several changes of address since the inception of this case. He has not informed his attorneys of any of these address changes, leaving it up to office personnel to contact him in order to find out where to mail him information, file-stamped copies and other correspondence.
 {¶ 14} "Counselors believe that the lack of communication and erratic behavior of Defendant has created a situation in which they will not be able to provide a complete and effective defense for this Defendant. Wherefore, Counselors for this Defendant hereby move this Court for an Order requiring a mental evaluation of the competency of this Defendant and withdrawing their names as Counselors of Record."
 {¶ 15} On March 16, 2001, defense counsel moved to continue the trial date of March 19, 2001, because he asserted Carson had seen a licensed social worker who was prepared to say that Carson needed a competency evaluation.
 {¶ 16} On the day of trial, the court conducted a hearing upon defense counsel's request that Carson be evaluated for his competency to stand trial. Defense counsel indicated he would call no witnesses and the State argued that Carson had failed to meet his burden of establishing a need for a competency evaluation.
 {¶ 17} The court asked Carson if he had been working during the month preceding the trial. Carson replied he had worked only 13 or 14 days, but that his boss had been very understanding of his situation. The court then found that Carson had failed to meet his burden and that the court was satisfied he was competent because he appeared and participated with his counsel at all prior hearings and kept his employment. The court also indicated that it did not believe the licensed social worker, Timothy Long, was qualified to make a mental assessment of the defendant.
 {¶ 18} In his first assignment, Carson contends the trial court erred in not permitting his trial counsel, Daniel J. O'Brien, to withdraw from representing him. Carson argues that his failure to meet with Mr. O'Brien until the Friday before trial put Mr. O'Brien in a position where he could not effectively represent him.
 {¶ 19} The State argues that the trial court did not abuse its discretion in denying the withdrawal request, because Carson was merely engaging in "delaying tactics" in order to stay free on bond pending a trial he hoped to get continued.
 {¶ 20} On the day of trial Mr. O'Brien filed a list of his potential witnesses. They included the defendant's mother, Fred Lickert and Doug Head, accident reconstructionists, Brett Domescick, a realtor and Timothy Ling. Mr. O'Brien indicated other relatives would testify about the loving relationship with the defendant, but he had no addresses for them because the defendant had not provided the same to him.
 {¶ 21} It is well settled that a withdrawal motion is committed to the sound discretion of the trial court. State v. Edgell (1972),30 Ohio St.2d 103, 111. A reviewing court should not reverse the decision of the trial court in the absence of an abuse of that discretion. Abuse of discretion commonly is described as more than a mere error of law or judgment. It implies that the trial court's attitude is arbitrary, unreasonable or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 22} In order for a court to grant counsel's motion to withdraw, there must be a "break down in the attorney-client relationship of such magnitude as to jeopardize the defendant's right to the effective assistance of counsel." State v. Henness (1997), 79 Ohio St.3d 53, 65.
 {¶ 23} Although we believe the matter close, we cannot say the trial court acted arbitrarily in denying Mr. O'Brien's withdrawal request from representing the defendant. Mr. O'Brien represented at the motion hearing that the defendant had denied remembering the accident. In light of the State's representation that Carson's vehicle was traveling at a speed of 106 miles per hour prior to the accident, it is not surprising that Carson had no memory of the accident. Indeed, Mr. O'Brien did not list Carson, who had a prior record, as a defense witness. Mr. O'Brien listed "accident reconstructionists" as the defendant's witnesses and also family friends. There is also evidence to support the State's position that Carson was merely attempting to delay his trial by refusing to cooperate with his counsel. He had secured two prior continuances and he remained on bond after each continuance. We also found in the third assignment there was no evidence submitted by Carson which would require a competency evaluation. There was evidence that Carson had worked 13 or 14 days in the month preceding the date of trial. There was also no evidence that Carson was not completely satisfied with Mr. O'Brien's representation of him. (Tr. 3 no contest plea). The record, in short, fails to show that there was a breakdown in the attorney-client relationship of such a magnitude as to jeopardize Carson's right to the effective assistance of counsel. The first assignment of error is overruled.
 {¶ 24} In his second assignment, Carson argues his no contest plea to the charge was not voluntarily, intelligently, and knowingly made. He argues that the plea record demonstrates the trial court did not comply with the requirements of Crim.R. 11(C)(2).
 {¶ 25} The record demonstrates that Carson signed a "No Contest Petition" on the day of trial indicating he was 30 years of age with 16 years of schooling. In the petition Carson acknowledged that he understood the effect of his no contest plea and the constitutional rights he would surrender by entering such a plea. He also acknowledged that he understood the maximum sentence he faced for the offense charged and that he understood the underlying plea agreement with the State of Ohio.
 {¶ 26} In open court, the court asked Carson if he hadn't signed the "No Contest Petition" and whether he had understood it. Carson replied "Yeah, pretty much." The court then proceeded to review the petition with Carson to insure his understanding of it. Our review indicates, the trial court fully complied with Rule 11 in every respect. The second assignment is overruled.
 {¶ 27} In Carson's third assignment he contends the trial court erred when he denied his motion for a competency evaluation. Carson argues that R.C. 2945.37 requires the trial court have him evaluated for competency because he raised the issue.
 {¶ 28} R.C. 2945.37 protects a criminal defendant's right not to be tried or convicted while incompetent. It states as follows:
 {¶ 29} "[I]n a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion." R.C.2945.37(B).
 {¶ 30} R.C. 2945.371 provides that if the issue of a defendant's competence is raised under R.C. 2945.37, the court "may" order one or more, but not more than three evaluations of the defendant's mental condition. The use of the word "may" supports the conclusion that a trial court is not required to order an evaluation every time he raises the issue. Instead, the wording of the statute implies that the ordering of an examination is a matter within the discretion of the trial court. If the evidence at the hearing raises a genuine question as to the defendant's competency, the court can order that one or more evaluations be performed. If it does not, the court may find the defendant competent and proceed to trial. The burden is on the defendant to submit enough evidence to put the question at issue. See, State v. Bailey (1992),90 Ohio App.3d 58 at 67. Also see, State v. Rubenstein (1987),40 Ohio App.3d 57. An evidentiary hearing is constitutionally required whenever there is sufficient indicia of incompetency to call into doubt defendant's competency to stand trial. State v. Were (2002),94 Ohio St.3d 173. The trial court's own observations of the defendant schooled the trial court's discretion. State v. Filiaggi (1999),86 Ohio St.3d 230.
 {¶ 31} Given that defense counsel are officers of the court, their assertions or suggestions cannot be dismissed. Filiaggi, at 236. Here defense counsel asserted that Carson missed scheduled appointments and showed up at his office late for trial preparation. There, however, was no evidence offered that Carson did not comprehend the nature of the proceedings he faced. There was certainly evidence that Carson had some difficulty facing up to the possibility he might be convicted of the pending charge. There was no evidence submitted that Carson was unable to counsel with his lawyer, only that he missed appointments to see his lawyer. Carson admitted he had worked 13-14 days in the previous month. There was no evidence of any previous psychiatric illnesses. In short, Carson failed to demonstrate the trial court abused its discretion in having him evaluated for competency to stand trial. The third assignment of error is overruled.
 {¶ 32} In his fourth assignment, Carson contends the trial court erred in ordering him to pay the victim's funeral bill of $7500. Carson argues that the record contains no evidence to support the trial court's restitution order. The State argues that Carson waived any error in the court's finding absent a contemporaneous objection.
 {¶ 33} R.C. 2929.18 provides that the court may order restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. This section also provides that the trial court shall determine the amount of restitution to be made by the offender at the sentencing. The trial court ordered Carson to pay $7500 in restitution because "It's the court's understanding that that's what the funeral bill was." (Tr. 5). No objection was made to the restitution order by Carson or his counsel. We, however, have never required a defendant to object to the sentence imposed by the court as a condition of raising a sentencing error on appeal.
 {¶ 34} The amount of restitution ordered must bear a reasonable relationship to the loss suffered. State v. Clifton (1989),65 Ohio App.3d 117. In Clifton, the presentence report contained a figure of $7,176 earmarked for restitution. There was, however, no finding as to the amount of theft committed by the appellant in the report or by the lower court.
 {¶ 35} In State v. Marbury (1995), 104 Ohio App.3d 119, the Cuyahoga County Court of Appeals held that it was "plain error" for the trial court to impose a restitution order in the absence of documentation to support it. In this matter, the trial court did not inform the parties how it determined the amount of restitution. Accordingly, we sustain the appellant's fourth assignment of error.
 {¶ 36} The judgment of the trial court is Affirmed in part and Reversed in part, and this matter is Remanded for a further hearing on the amount of restitution to be ordered paid by the appellant.
Fain, P.J., and Wolff, J., concur.