[Cite as *State v. Halcomb*, 2013-Ohio-1301.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                     CASE NO. 13-12-13

      v.

ODIA HALCOMB, JR.,                    O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 11-CR-0228

Judgment Affirmed

Date of Decision:    April 1, 2013

APPEARANCES:

    *Jonathan G. Stotzer*  for Appellant

    *Derek W. DeVine and Rhonda L. Best*  for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Odia Halcomb, Jr. ("Halcomb"), appeals the judgment of the Seneca County Court of Common Pleas journalizing his conviction by a jury for aggravated burglary and ordering him to pay restitution.

{¶2} On March 7, 2011, Halcomb's step-mother, Donna Halcomb ("Donna"), received multiple phone calls from her brother-in-law, Dominic Buccione ("Dominic"), concerning a letter his wife, Cheryl Buccione ("Cheryl") , received regarding one of Donna's student loans. The letter indicated that Donna had listed Cheryl as a reference and could not be located. The letter sought Cheryl's assistance in obtaining Donna's forwarding information. Cheryl is Donna's sister and by all accounts Donna and Cheryl do not get along. The record indicates that the conversations between Dominic and Donna led to a heated exchange of words.

{¶3} After her conversations with Dominic, Donna picked up Halcomb and drove to the Buccione's home to retrieve the letter. Upon answering the door, Cheryl and Dominic told Donna and Halcomb to leave. Nevertheless, a physical altercation ensued between the parties on the front porch, which resulted in Cheryl being thrown from the porch. Dominic went back into his home to get a baseball bat. Halcomb entered the home and seized the bat from Dominic. The scuffle

between Dominic and Halcomb continued into the home. Then, at Donna's direction, Halcomb took a piece of mail from a table inside the home and left.

{¶4} Cheryl and Dominic each suffered injuries as a result of the incident. Cheryl was transported to the hospital by ambulance and was treated for a massive tissue contusion on her thigh. Dominic initially declined to go to the hospital for his injuries, but changed his mind after experiencing a great deal of pain. There, Dominic was treated for multiple minor injuries and a broken rib.

{¶5} On October 20, 2011, the Seneca County Grand Jury indicted Halcomb on one count of aggravated burglary in violation of R.C. 2911.11(A)(1), (B), a first degree felony; one count of felonious assault in violation of R.C. 2903.11(A)(2), (D)(1)(a), a second degree felony; and one count of assault in violation of R.C. 2903.13(A), (C), a misdemeanor of the first degree. A jury trial was held on January 26, 27, and 30, 2012. At the end of the trial, the jury returned verdicts of not guilty on the felonious assault and assault charges. However, the jury also returned a verdict of guilty on the aggravated burglary charge and specifically found that Halcomb did not act in self-defense when he committed the aggravated burglary.

{¶6} The trial court held a sentencing hearing on February 10, 2012. The trial court sentenced Halcomb to serve six years in prison and ordered Halcomb to pay restitution in the amount of $7,015.94, which included compensating Cheryl

and Dominic for the economic loss resulting from their injuries. Halcomb appeals from this judgment and raises the following assignments of error.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED IN ORDERING RESTITUTION FOR EXPENSES RELATED TO PHYSICAL HARM CAUSED AS [HALCOMB] WAS SPECIFICALLY FOUND NOT GUILTY OF A PHYSICAL HARM TO EACH VICTIM, BY BEING FOUND NOT GUILTY OF COUNT TWO (FELONIOUS ASSAULT) & NOT GUILTY OF COUNT THREE (ASSAULT).**

**ASSIGNMENT OF ERROR NO. II**

**THE VERDICT OF GUILTY TO AGGRAVATED BURGLARY BY THE JURY IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND MUST BE REVERSED.**

{¶7} For ease of discussion, we elect to discuss Halcomb's assignments of error out of order.

{¶8} In the second assignment of error, Halcomb claims that his conviction for aggravated burglary is against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, " '[weigh] the evidence and all reasonable inferences, consider the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387

(1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

{¶9} The jury convicted Halcomb of aggravated burglary in violation of R.C. 2911.11(A)(1), (B), which states in pertinent part:

> **(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:**
>
> **(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;**
>
> **(B) Whoever violates this section is guilty of aggravated burglary, a felony of the first degree.**

{¶10} The following testimony relative to Halcomb's conviction for aggravated burglary was elicited before the jury at trial.

{¶11} In the prosecution's case-in-chief, Dominic testified that not long after he spoke to Donna on the phone, Donna and Halcomb arrived at his home around 7:00 p.m. Dominic recalled that when he answered the door he noticed that Donna was irate, but that Halcomb remained quiet. Dominic maintained that he stood in the doorway and told Donna and Halcomb to leave. When they failed

-5-

to do so, Cheryl came to the front door to confront her sister. Dominic testified that Halcomb grabbed Cheryl, threw her off the front porch, and forced his way into the home. Dominic testified that, in an act of self-defense, he grabbed a baseball bat from a room adjacent to the front door. Dominic recalled seeing Halcomb come after him in the house and then he "went down." (Trans. at 123).

{¶12} Dominic explained that he momentarily passed out and that when he regained consciousness he saw Halcomb in the kitchen with his bat. Dominic recalled that he tried to grab the bat from Halcomb, but Halcomb "started jamming" the bat at him. (Id.). Dominic stated that he was crouched down near the couch and attempted to pick up his phone from the coffee table to call 9-1-1, but Halcomb tried to wrestle the phone away from him.

{¶13} Dominic stated he then yelled to Cheryl, who was now in the kitchen, to call 9-1-1. He recalled Halcomb approaching Cheryl and attempting to wrestle the phone from her. Dominic remembered hearing Donna yell to Halcomb, "Get the mail. Get the mail." Dominic testified he saw Halcomb take mail from the kitchen table and then leave the house with his bat. Dominic testified that as a result of Halcomb's conduct that night he received multiple bruises on his arms and on the side of his head, and that his rib was also broken.

{¶14} Cheryl also provided testimony for the prosecution. Cheryl testified that after Dominic answered the door, she approached the doorway, and observed

Donna screaming at Dominic. Cheryl stated that she told Donna to get off of her property. Cheryl recalled that she went to step forward and Halcomb grabbed her leg and threw her off the front porch.[1] Cheryl maintained that she did nothing to provoke Halcomb's conduct.

{¶15} Cheryl testified that after getting up from the ground, she went into the house to call 9-1-1 and observed Dominic kneeling by the couch. She remembered seeing Dominic's bat in Halcomb's hand. Cheryl testified that she saw Halcomb hit Dominic with the bat and then try to take his phone. She testified that Halcomb then approached her and tried to grab the phone from her. Cheryl recalled hearing Donna yell "Get the mail," "Get the mail," while she struggled with Halcomb. She stated that after Halcomb was unsuccessful in taking her phone, he took some mail and left. Cheryl testified she suffered massive tissue damage as a result of Halcomb throwing her from the front porch.

{¶16} Another witness for the prosecution was Lt. Aaron Russell of the Tiffin Police Department. He testified that on the night of March 7, 2011, he received a call from dispatch stating that a man had thrown a woman off of a porch. After responding to the call, Lt. Russell testified that he spoke to both Dominic and Cheryl, who relayed their versions of the events to him. Lt. Russell recalled that Dominic was confused that night and could not remember the details

---

[1] Testimony at trial indicated that the porch sat approximately a foot and a half off the ground and did not have railings.

of the incident[2] and, contrary to her testimony on the stand, Cheryl stated to Lt. Russell that night that she never actually saw Halcomb hit Dominic with the bat.

{¶17} Lt. Russell testified that he took several pictures that night, which included images of scratches and bruises on Dominic's body and images of the Buccione home in complete disarray with several pieces of furniture overturned. These pictures were admitted at trial and submitted to the jury.

{¶18} Lt. Russell also testified that when he first confronted Donna she told him that she witnessed a neighbor barge into the Buccione home and knock Dominic down. She also claimed not to know the neighbor. When Lt. Russell spoke to Halcomb, Halcomb told Lt. Russell that he did not know about the incident, was never at the Buccione home, and that he had been home all day on the date in question except for going to lunch with Donna and his father. Both Donna and Halcomb later admitted on the stand that they lied to Lt. Russell when they made these statements.

{¶19} Donna provided testimony for the defense. She testified that Dominic was harassing her over the phone that afternoon. Donna testified that she went to the Buccione home to retrieve the letter because she needed to give it to her Bankruptcy attorney. She explained that Halcomb accompanied her because she was taking him to pick up his laundry across town.

---

[2] There was medical testimony at trial which indicated that Dominic had a blood-alcohol content of .178. Dominic admitted to drinking three and a half beers and taking some pain medication earlier that evening.

{¶20} Donna recalled knocking on the door multiple times before Dominic answered and rudely inquired who they were and why they were there. Donna testified that Cheryl came "flying to the door" and yelled at them to leave. (Trans. at 387). Donna testified that Cheryl attempted to kick Halcomb in the "private area" when Halcomb grabbed her leg and tried to stop her. (Id.). Donna recalled Cheryl then jumped on Halcomb's back. Donna grabbed Cheryl and pulled her off of Halcomb, which resulted in Cheryl falling off of the front porch.

{¶21} Donna remained on the front porch while Halcomb was inside the home. She claimed that she did not see what happened inside the home because she was with Cheryl on the front porch. She admitted to screaming "give me my F'ing letter." (Trans. at 388). She remembered seeing Dominic with the bat initially, but then Halcomb performed a "wrestling move—[l]ike a take-down" to get the bat away from Dominic. (Trans. at 391). Donna recalled Halcomb was still holding the bat when he exited the Buccione home. At that time, Donna remembered Halcomb stating to her "no idiot needs a bat." (Trans. at 390). She testified that she and Halcomb simply left the house and went to pick up his laundry.

{¶22} Halcomb also testified in his defense. He recalled Donna knocking on the Bucciones' front door multiple times before Dominic answered. Halcomb remembered introducing himself to Dominic and Donna asking for her mail.

Halcomb testified "and that's when Cheryl, out of nowhere, tries to field goal kick me in the balls." (Trans. at 440). Halcomb recalled grabbing Cheryl by the ankle with both hands and pulling her down on the porch. Halcomb testified that Dominic then stated "you done fucked up" and pulled Halcomb inside the doorway. (Trans. at 441). Halcomb explained that he and Dominic engaged in a little tussle and he wrestled Dominic down to the ground. Halcomb admitted to hitting Dominic with his hands in self-defense.

{¶23} Halcomb testified he attempted to leave the house when he saw Dominic with a baseball bat ready to swing at him. Halcomb explained that he then did a "Double A take-down" wrestling move on Dominic to take the bat away from him. (Trans. at 443). Halcomb denied entering the house past more than a few feet from inside the threshold. Halcomb also denied hitting or jabbing Dominic with the bat. Halcomb testified that while Dominic was still on the ground, he grabbed an envelope off a table next to the front door. Halcomb stated he then walked out the door, threw the baseball bat in the yard and left.[3]

{¶24} On appeal, Halcomb argues that he cannot be found guilty of committing aggravated burglary, without also being found guilty of committing assault and felonious assault. Thus, Halcomb contends that the disparate verdicts

---

[3] Notably, Lt. Russell testified that the baseball bat was never recovered.

demonstrate that the jury clearly lost its way and that his conviction for aggravated burglary was against the manifest weight of the evidence.

{¶25} The Second District aptly stated the following regarding the legislative intent in broadening the offense of aggravated burglary from its common law roots:

> **Since 1974, when the breaking-and-entering offenses were rewritten, there have been three burglary-type offenses: breaking and entering, burglary, and aggravated burglary. R.C. 2911.11; 2911.12; 2911.13. Breaking and entering concerns the trespass of an unoccupied structure; burglary concerns trespassing in an occupied structure when someone other than an accomplice is likely to be present; and, as stated above, aggravated burglary adds the element that the offender inflicts or attempts to inflict physical harm or has a deadly weapon. The distinguishing factor among these offenses is "*the relative potential for harm to persons*," with aggravated burglary carrying the greatest risk of harm. 1973 Legislative Service Commission Notes to R.C. 2911.11.**
>
> **In enacting the statutes proscribing these three offenses, the General Assembly removed distinctions between daytime and nighttime break-ins, the type of property entered, and the motive for entering. *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 66. The Supreme Court of Ohio has determined that "the General Assembly's intent * * * was to broaden the concept of burglary from an offense against the security of the home *to one against the security of persons who may be inside*." *Gardner* at ¶ 31.**

*State v. Marriott*, 189 Ohio App.3d 98, 2010-Ohio-3115, ¶¶ 27-28 (2d Dist.) (emphasis added).

{¶26} Halcomb's argument on appeal runs contrary to the underlying principles of the aggravated burglary offense, which are that aggravated burglary is an offense against the security of the persons who may be inside a home and it is elevated from the other burglary offenses due to the high potential of harm to persons inside a home as a consequence of the defendant's actions. Moreover, a comparison of the elements demonstrates that the aggravated burglary charged in this case was not predicated upon whether Halcomb knowingly caused or attempted to cause Cheryl physical harm or whether he knowingly caused or attempted to cause Dominic serious physical harm—which are each essential to proving the assault and felonious assault charges respectively.

{¶27} In the instant case, the evidence establishes that Halcomb entered the Buccione home without permission and took personal property from a table inside of their home. The evidence also establishes that during Halcomb's commission of this act, Cheryl and Dominic suffered physical harm. Notably, the jury specifically found that Halcomb did not act in self-defense when he committed the aggravated burglary.

{¶28} In sum, there was ample evidence presented at trial for the jury to conclude beyond a reasonable doubt that Halcomb committed the offense of aggravated burglary. Furthermore, the jury's verdict finding Halcomb committed aggravated burglary was not dependent on the jury also finding Halcomb

committed assault and felonious assault. Therefore, we conclude that the jury's verdict convicting Halcomb of aggravated burglary is not against the manifest weight of the evidence. Halcomb's second assignment of error is overruled.

*First Assignment of Error*

{¶29} Halcomb argues in the first assignment of error that the trial court erred in imposing restitution for the economic loss sustained by Dominic and Cheryl as a result of Halcomb's commission of the aggravated burglary. Halcomb again argues that the jury verdicts finding him not guilty of assault and felonious assault prevent the trial court from ordering him to pay restitution for Cheryl's and Dominic's injuries.

{¶30} Despite Halcomb's contentions on appeal, we find that the jury verdict convicting Halcomb of aggravated burglary provided the trial court with an independent basis—regardless of whether separate assault and felonious assault charges were ever filed—to order Halcomb to pay restitution to Cheryl and Dominic for the economic loss stemming from the injuries they received *as a result of Halcomb's conduct constituting the aggravated burglary offense*.

{¶31} Revised Code Section 2929.18(A)(1) permits a trial court to order a convicted felon to make restitution to the victims of his crime "in an amount based on the victim's economic loss." Economic loss is defined by R.C. 2929.01(L) as, "any economic detriment suffered by a victim as a direct and proximate result of

-13-

the commission of an offense and includes any loss of income due to lost time at work because of any injury caused to the victim, and any property loss, medical cost, or funeral expense incurred as a result of the commission of the offense." Here, the prosecution presented competent credible evidence, by way of testimony and exhibits, of the actual economic loss suffered by Cheryl and Dominic as a result of Halcomb committing the aggravated burglary. Thus, restitution for their medical expenses and the loss of income due to lost time at work incurred as a consequence of the aggravated burglary is expressly authorized by R.C. 2929.18(A)(1). Therefore, we find no error in the trial court's restitution order. Halcomb's first assignment of error is overruled.

{¶32} Based on the foregoing, the judgment of the Seneca County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. concurs.**

**WILLAMOWSKI, J., concurs in Judgment Only.**

**/jlr**