[Cite as *State v. Perkins*, 2014-Ohio-2242.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                     CASE NO. 9-13-52

    v.

ADAM D. PERKINS,                        O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Marion County Common Pleas Court
Trial Court No. 12-CR-0584

**Judgment Reversed and Cause Remanded**

**Date of Decision: May 27, 2014**


APPEARANCES:

    *Kevin P. Collins* for Appellant

    *Brent W. Yager* for Appellee

**PRESTON, J.**

{¶1} Defendant-appellant, Adam D. Perkins ("Perkins"), appeals the judgment entry of sentence of the Marion County Court of Common Pleas. For the reasons below, we reverse.

{¶2} This case stems from a July 2, 2012 incident, in which Perkins and two others stole hydraulic jacks, a hydraulic pump, a generator, and other equipment belonging to Aztec Construction ("Aztec"). (July 11, 2013 Tr. at 10). Perkins and the others stole the equipment from a Marion County farm, where Aztec was erecting grain bins for the owner. (*Id.*).

{¶3} On December 6, 2012, the Marion County Grand Jury indicted Perkins on three counts: Count One of theft in violation of R.C. 2913.02(A)(1), a fourth-degree felony; Count Two of breaking and entering in violation of R.C. 2911.13(B), a fifth-degree felony; and, Count Three of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony. (Doc. No. 1).

{¶4} The trial court held an arraignment hearing on December 10, 2012, at which Perkins, represented by counsel, entered pleas of not guilty. (Doc. No. 3).

{¶5} On July 11, 2013, the parties reached a negotiated plea agreement, and the trial court held a change-of-plea hearing. (Doc. No. 27); (July 11, 2013 Tr. at 1). As part of the plea agreement, plaintiff-appellee, State of Ohio ("State"), agreed to enter a nolle prosequi as to Count Two and to amend Count Three to

attempted tampering with evidence in violation of R.C. 2923.02 and 2921.12(A)(1), a fourth-degree felony, in exchange for Perkins pleading guilty to Count One and Count Three, as amended. (*Id.*); (*Id.*). The trial court accepted Perkins's guilty pleas and found him guilty of Counts One and Three. (July 11, 2013 Tr. at 12); (Doc. No. 30). The trial court ordered a presentence investigation and scheduled a dispositional and sentencing hearing. (*Id.*); (Doc. No. 29).

{¶6} The trial court held the dispositional and sentencing hearing on September 9, 2013. (Sept. 9, 2013 Tr. at 1); (Doc. No. 30). At the change-of-plea hearing two months earlier, the State agreed to recommend Perkins receive community-control sanctions for a period of two years. (July 11, 2013 Tr. at 1-2). The State also indicated that it would seek restitution.[1] (*Id.* at 2). At the September 9, 2013 hearing, the State presented testimony and exhibits in support of its recommended restitution. (Sept. 9, 2013 Tr. at 2-20).

{¶7} The trial court sentenced Perkins to two years of community control. (*Id.* at 32-34). The trial court also ordered as part of its sentence that Perkins "pay restitution to the Clerk of Court Office in the amount of $177,470.00 for Aztec Construction, * * * and Aztec Construction is granted judgment against the Defendant in the sum of $177,470.00." (Doc. No. 30). (*See also* Sept. 9, 2013 Tr. at 32). The trial court ordered that Perkins pay the restitution at the rate of

---

[1] The plea agreement did not specify an amount of restitution but did say, "Court costs, restitution, and other financial sanctions may also be imposed." (Doc. No. 27).

$1,000.00 per month. (Sept. 9, 2013 Tr. at 32); (Doc. No. 30). The trial court filed its judgment entry of sentence on September 30, 2013. (Doc. No. 30).[2]

{¶8} On October 11, 2013, Perkins filed a notice of appeal. (Doc. No. 31). He raises one assignment of error for our review.

**Assignment of Error**

**The trial court erred to the prejudice of defendant-appellant by ordering him to pay restitution in excess of the victim's economic damages.**

{¶9} In his assignment of error, Perkins argues that the trial court abused its discretion by ordering him to pay $177,470 because "there is insufficient detail or verification to support a restitution award," aside from $500 for a generator that was not recovered and that Perkins agrees was worth $500. (Appellant's Brief at 10). Specifically, Perkins argues: that the trial court should not have awarded restitution for the "jacks and related equipment" because they were recovered; that the trial court should not have awarded restitution for Aztec's private investigator and lost income because there is insufficient evidence concerning those items and because Aztec has instituted a civil action seeking lost profits; and, that there was

---

[2] Although Perkins does not raise the issue in his brief, we note that the judge who sentenced Perkins at the sentencing hearing is not the same judge who, apparently sitting "by assignment," signed the judgment entry of sentence. (*Compare* Sept. 9, 2013 Tr. *with* Doc. No. 30). While this procedure may very well have been permitted by Crim.R. 25(B), our disposition of this appeal negates any need there may have been to address the issue.

-4-

insufficient evidence concerning the value of miscellaneous hand tools that were not recovered.

{¶10} "An appellate court reviews a trial court's decision to impose restitution under an abuse-of-discretion standard." *State v. Rohrbaugh*, 191 Ohio App.3d 117, 2010-Ohio-6375, ¶ 14 (3d Dist.), citing *State v. Griffus*, 3d Dist. Union No. 14-08-39, 2009-Ohio-304, ¶ 7. An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). *See also State v. Adams*, 3d Dist. Defiance No. 4-09-16, 2009-Ohio-6863, ¶ 33. "Under this standard of review, an appellate court may not simply substitute its judgment for that of the trial court." *Adams*, 2009-Ohio-6863, at ¶ 33.

{¶11} R.C. 2929.18(A)(1) governs restitution orders and "permits a trial court to order a convicted felon to make restitution to the victims of his crime 'in an amount based on the victim's economic loss.'" *State v. Halcomb*, 3d Dist. Seneca No. 13-12-13, 2013-Ohio-1301, ¶ 31, quoting R.C. 2929.18(A)(1). R.C. 2929.01(L) defines "economic loss" as:

> any economic detriment suffered by a victim as a direct and
> proximate result of the commission of an offense and includes any
> loss of income due to lost time at work because of any injury caused

to the victim, and any property loss, medical cost, or funeral expense incurred as a result of the commission of the offense.

*Halcomb* at ¶ 31, quoting R.C. 2929.01(L).

{¶12} The trial court may base the amount of restitution it orders on any of a number of sources:

an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.

R.C. 2929.18(A)(1). "'However, the amount of the restitution must be supported by competent, credible evidence in the record from which the court can discern the amount of the restitution to a reasonable degree of certainty.'" *State v. Didion*, 173 Ohio App.3d 130, 2007-Ohio-4494, ¶ 20 (3d Dist.), quoting *State v. Policaro*, 10th Dist. Franklin No. 06AP-913, 2007-Ohio-1469, ¶ 7. If the offender or the victim disputes the amount of restitution, the trial court must hold a hearing on restitution. *State v. Lamere*, 3d Dist. Allen No. 1-07-11, 2007-Ohio-4930, ¶ 10, citing R.C. 2929.18(A)(1); *State v. Lalain*, 136 Ohio St.3d 248, 2013-Ohio-3093, ¶ 22-23.

**{¶13}** "'In an order of restitution, the amount of restitution must bear a reasonable relationship to the loss suffered.'" *State v. Estes*, 3d Dist. Seneca No. 13-11-14, 2011-Ohio-5740, ¶ 20, quoting *State v. Marbury*, 104 Ohio App.3d 179, 181 (8th Dist.1995). "A restitution order that does not bear a reasonable relationship to the actual loss suffered by the victim is an abuse of a trial court's discretion." *State v. Hipsher*, 12th Dist. Warren No. CA2011-12-128, 2012-Ohio-3206, ¶ 13, citing *State v. Stamper*, 12th Dist. Butler No. CA2009-04-115, 2010-Ohio-1939, ¶ 17.

**{¶14}** At the final dispositional and sentencing hearing, the State offered the testimony of one witness—Monica Rodriguez, Aztec's secretary. (Sept. 9, 2013 Tr. at 3). The State first asked Rodriguez about "miscellaneous hand tools, small wrenches, punches, sockets, and other miscellaneous hand tools," which were not recovered. (*Id.* at 3-4). Rodriguez testified that receipts reflected these miscellaneous hand tools totaled $33,000 when purchased in new condition, but Aztec was requesting half of that amount in restitution—$16,500. (*Id.* at 4). Rodriguez testified that a generator, which was also not recovered, was worth $500. (*Id.*).

**{¶15}** Rodriguez testified that Aztec was missing: (1) 64 hose extensions at $95 for each replacement, totaling $6,080; (2) 48 brackets at $78 for each replacement, totaling $3,744; and, (3) 24 blocks at $84 for each replacement,

-7-

totaling $2,016. (*Id.* at 6-7). According to Rodriguez, Aztec was also missing: (1) 24 hydraulic jacks, which cost $52,400 to replace; and, (2) a hydraulic pump, which cost $12,800 to replace. (*Id.* at 7-8). Rodriguez identified State's Exhibit 1 as a July 5, 2012 invoice itemizing the purchase of the replacement jacks ($52,440, before discount and shipping), hydraulic pump ($12,800, before discount and shipping), hose extensions ($4,560, before discount and shipping), and brackets ($1,872.00, before discount and shipping). (*Id.* at 5-8); (State's Ex. 1). The July 5, 2012 invoice totaled $69,172, after the discount and shipping, and did not reflect the blocks that were missing. (State's Ex. 1); (Sept. 9, 2013 Tr. at 7). Additionally, the prosecution's official version of the offense in the presentence investigation report ("PSI") states that Perkins stole from Aztec 24 hydraulic jacks valued at $72,000, one hydraulic pump valued at $15,000, 24 stabilizing blocks valued at $2,000, and 48 wall connectors valued at $5,000. (PSI).

{¶16} Aztec recovered the jacks and pump three months after ordering the replacements, but it did not recover the blocks, and the record is unclear concerning whether Aztec recovered the hose extensions and brackets. (Sept. 9, 2013 Tr. at 5-8, 17). The recovered jacks and pump are sitting unused in Aztec's shop in North Carolina because Aztec "cannot use two at the same time." (*Id.* at 8, 19-20). Rodriguez identified State's Exhibit 2 as the invoice reflecting Aztec's

2008 purchase of the jacks ($49,200, before discount and shipping) and pump ($9,900, before discount and shipping) stolen by Perkins. (*Id.* at 8); (State's Ex. 2).

**{¶17}** Rodriguez testified that Aztec hired a private investigator for $23,000 to investigate the theft. (Sept. 9, 2013 Tr. at 8). She testified that Aztec lost a job for $73,500. (*Id.* at 9).

**{¶18}** On cross-examination, Rodriguez testified that Aztec has a total of 32 jacks and runs 24 on one jobsite. (*Id.* at 13). She also testified that on August 19, 2013, Aztec filed a civil lawsuit against Perkins and his companies, seeking damages for much of what it was requesting in restitution. (*Id.* at 15-16). Rodriguez testified that the recovered equipment still works and has monetary value, and she agreed that Aztec could sell the jacks and, if awarded restitution, get "double paid." (*Id.* at 17-18).

**{¶19}** At the conclusion of Rodriguez's testimony, the trial court admitted State's Exhibits 1 and 2 over Perkins's objection. (*Id.* at 20). Counsel for the State then offered a statement concerning its recommended sentence, which included restitution, although the State did not recommend an amount of restitution. (*Id.* at 22-23).

**{¶20}** Next, the trial court heard statements from Rodriguez and the general manager of Custom Agri Systems. (*Id.* at 23-25). It appears from the record that

the farm owner in need of grain bins hired Custom Agri Systems, and Custom Agri Systems contracted with Aztec to construct the grain bins. (*See id.* at 24-25). (*See also* July 11, 2013 Tr. at 10). According to the general manager, the delay in constructing the grain bins because of the theft cost Custom Agri Systems money, but he said Custom Agri Systems's costs were "immaterial." (Sept. 9, 2013 Tr. at 24-25).

**{¶21}** Perkins's counsel then made a statement, contesting all of the items for which the State was requesting restitution, except for the generator. (*Id.* at 25-30). Finally, Perkins made a statement to the trial court. (*Id.* at 30-31).

**{¶22}** The trial court took a short recess "to contemplate the restitution portion." (*Id.* at 31). Once back in session, the trial court said it "considered the testimony related to restitution as well as the statements presented by the State of Ohio and the victims and the defense." (*Id.* at 32). The trial court then sentenced Perkins. (*Id.* at 32-34). As part of the sentence, the trial court ordered that Perkins pay Aztec, via the clerk of courts, $177,470 in restitution; however, the trial court did not explain how it arrived at that amount. (*Id.*); (Doc. No. 30).

**{¶23}** A trial court is under no duty to itemize or otherwise explain how it arrived at the amount of restitution it orders, so long as the trial court can discern the amount of restitution to a reasonable degree of certainty from competent, credible evidence in the record. *See Didion*, 173 Ohio App.3d 130, at ¶ 20.

Moreover, if an appellate court can discern from the record that the restitution order bears a reasonable relationship to the actual loss suffered by the victim, it will conclude that the trial court did not abuse its discretion. *See Hipsher*, 2012-Ohio-3206, at ¶ 12-14 (affirming the trial court's restitution order notwithstanding that the trial court did not itemize or explain how it arrived at the amount of restitution it ordered, because testimony in the record supported the amount of restitution).

{¶24} However, the converse is also true—if an appellate court cannot discern from the record that the restitution order bears a reasonable relationship to the actual loss suffered by the victim, it will conclude that the trial court abused its discretion. *See State v. Bruce*, 95 Ohio App.3d 169, 173-174 (12th Dist.1994) (remanding to the trial court for a redetermination of restitution where the record seemed to indicate that the trial court included impermissible expenses in its restitution order).

{¶25} It appears that to arrive at $177,470 in restitution, the trial court included items that were recovered (i.e. the hydraulic jacks and hydraulic pump) and items that the record suggests may have been recovered, although that is unclear (i.e. the hose extensions and brackets). (*See* Sept. 9, 2013 Tr. at 5-8, 17). A trial court abuses its discretion when it orders restitution for the full value of property stolen even though that property was recovered and returned to the

victim. *See State v. Vorhees*, 3d Dist. Allen No. 1-05-63, 2006-Ohio-612, ¶ 4. To do so would be to award restitution to a victim in excess of the economic loss suffered by that victim, contrary to R.C. 2929.18(A)(1)'s command that the amount of restitution be "based on the victim's economic loss," which R.C. 2929.01(L) defines as including "any property *loss*." (Emphasis added.) *See Vorhees* at ¶ 4 ("Although the recovered property may have diminished in value, it is not without value. Since the victim did not suffer an economic loss of the full value, restitution can only be ordered for the economic loss suffered."). *See also State v. Bowman*, 181 Ohio App.3d 407, 2009-Ohio-1281, ¶ 12 (2d Dist.) (noting that allowing "double recovery" results in a windfall to the victim and a restitution amount in excess of the amount of the victim's economic loss).

{¶26} Moreover, R.C. 2929.01(L)'s definition of "economic loss" makes clear that in the case of stolen property, a victim cannot recover the amount paid to replace stolen property, but only the value of the "property loss." In other words, if a victim's stolen property is returned to him, and the property's value when returned is the same as the property's value at the time it was stolen, then the victim has not suffered "economic loss" for which restitution can be ordered, at least as to the value of that property. *See* R.C. 2929.18(A)(1) and 2929.01(L). Of course, the victim may have suffered other losses as a direct and proximate result

of the theft of the property, such as costs to rent replacement property until the stolen property was returned.

**{¶27}** In this case, the record indicates that the trial court may have failed in its restitution order to account for returned property, making the restitution amount greater than Aztec's economic loss contrary to R.C. 2929.18(A)(1). In other words, we cannot discern from the record that the restitution order bears a reasonable relationship to the actual loss suffered by Aztec as to recovered property.

**{¶28}** Nor can we discern from the record that the restitution order bears a reasonable relationship to the actual loss suffered by Aztec as to the "lost job" for $73,500, which it appears the trial court included in its restitution order. A victim's economic loss may include "any loss of income due to lost time at work because of any injury caused to the victim." R.C. 2929.01(L). *See also* R.C. 2929.18(A)(1); *State v. Belbachir*, 7th Dist. Belmont No. 08 BE 24, 2009-Ohio-1511, ¶ 5, 23 (affirming the trial court's restitution award for lost wages based on the victim's testimony that she missed work because the defendant damaged the door of her mobile home). However, economic loss "does not include fixed overhead costs that would have been incurred regardless of the offense." *State v. Brown*, 167 Ohio Misc.2d 45, 2011-Ohio-6994, ¶ 10 (M.C.). In other words, while economic loss may include lost income, it does not include costs that, if

-13-

included in a restitution order, would put the victim in a better position than if the offense had not occurred. *See id.* at ¶ 5.

**{¶29}** Here, when counsel for the State asked Rodriguez whether Aztec "los[t] any jobs because of this theft," she responded by saying, "Yes, sir. We did." (Sept. 9, 2013 Tr. at 9). Counsel for the State asked, "And what was that job for?" (*Id.*). Rodriguez responded, "That one job site was $73,500.00." (*Id.*). Based on this testimony, it is unclear whether the $73,500 was purely lost income or whether it included costs that Aztec would have incurred regardless of whether Perkins committed the offense. For that reason, we cannot conclude that the restitution order bears a reasonable relationship to the actual loss suffered by Aztec as to the lost job.

**{¶30}** For the reasons above, we hold that the trial court abused its discretion by ordering Perkins to pay $177,470 in restitution.[3]

---

[3] "R.C. 2913.02(B)(2) categorizes theft offenses into different degrees depending on the value of the property or services stolen." *State v. Edmondson*, 92 Ohio St.3d 393, 397 (2001). Although Perkins does not raise the issue, we note that he was charged with and pled guilty to fourth-degree-felony "theft" in violation of R.C. 2913.02(A)(1). R.C. 2913.02(B)(2) provides, "If the value of the property or services stolen is [$7,500] or more and is less than [$150,000], a violation of this section is grand theft, a felony of the fourth degree." Therefore, the trial court ordered that Perkins pay restitution in an amount—$177,470—exceeding the upper parameter—$149,999.99—of his offense. This Court has stated that absent a plea-agreement term to the contrary, the amount of restitution generally must be limited to the offenses for which a defendant is charged and convicted. *State v. Wickline*, 3d Dist. Logan No. 8-10-20, 2011-Ohio-3004, ¶ 13-19. In *Lalain*, the Supreme Court of Ohio declined to address the issue of "whether restitution for a theft offense is limited to the property value corresponding to the degree of the theft conviction," although the Court said in dicta, "[W]e recognize that the amount of restitution is not correlated to the degree of the theft offense." 136 Ohio St.3d 248, at ¶ 19, 24. Regardless, based on our disposition of this appeal, we need not and do not address this issue.

-14-

{¶31} We disagree with Perkins's other arguments, however. It appears that to arrive at its restitution amount of $177,470, the trial court included the cost of Aztec's private investigator, $23,000. Perkins argues that there was insufficient evidence concerning the private investigator. The Court of Appeals for the Second District has held that R.C. 2929.18(A)(1) permits a trial court to order a defendant to pay restitution for the cost of a private investigator that the victim incurred as a direct and proximate result of the defendant's wrongdoing. *State v. Rigsbee*, 174 Ohio App.3d 12, 2007-Ohio-6267, ¶ 31-36 (2d Dist.). We agree with the Second District's reasoning in *Rigsbee*.

{¶32} Here, Rodriguez testified at the hearing that Aztec hired a private investigator, Ron Scheiderer, and paid $23,000 for Scheiderer's services. (Sept. 9, 2013 Tr. at 8-9). The PSI stated that Aztec retained Scheiderer, who located one of Perkins's codefendants, Benjamin Shores. (PSI). According to the PSI, Shores confessed and told Scheiderer the location of the stolen equipment. (PSI). Rodriguez's testimony and the PSI are sources on which the trial court was allowed to base its amount of restitution. *See* R.C. 2929.18(A)(1). Therefore, there was competent, credible evidence from which the trial court could have ascertained to a reasonable degree of certainty the amount of restitution for the cost of Aztec's private investigator.

**{¶33}** Perkins also argues that the trial court should not have awarded restitution for Aztec's private investigator, as well as for Aztec's lost job, because Aztec instituted a civil action seeking lost profits. Perkins cites no authority in support of this argument, and we reject it. R.C. 2929.18(A)(1) permits a trial court to order a defendant to pay restitution regardless of whether the victim filed a civil suit. *See* R.C. 2929.18(A)(1) ("All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender."); *State v. Tuemler*, 12th Dist. Warren No. CA2004-06-068, 2005-Ohio-1240, ¶ 13 ("[A] court 'can order restitution regardless of [a] civil suit settlement as long as it credits any amounts paid toward its determination of economic loss.'"), quoting *State v. Gray*, 7th Dist. Belmont No. 02 BA 26, 2003-Ohio-805, ¶ 21.

**{¶34}** Finally, Perkins argues that there was insufficient evidence concerning the value of miscellaneous hand tools that were not recovered. We disagree. Rodriguez testified that Aztec had receipts for hand tools purchased new for $33,000 but was requesting only half of that amount in restitution. (Sept. 9, 2013 Tr. at 4, 11-12). Therefore, there was competent, credible evidence from which the trial court could have ascertained to a reasonable degree of certainty the amount of restitution for Aztec's miscellaneous hand tools.

{¶35} Perkins's assignment of error is sustained, and we reverse the trial court's judgment and remand to the trial court for resentencing in a manner consistent with this opinion.

{¶36} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**SHAW, J., concurs.**

**/jlr**

**ROGERS, J., concurring separately.**

{¶37} I concur in the reversal and remand of this case but would limit the opinion to what is necessary and decline to comment on specific types of restitution.

{¶38} The question raised in this appeal is whether the trial court abused its discretion in determining the amount of restitution it ordered. The Ohio Supreme Court has found that it is an abuse of discretion to issue a ruling that "lacks a 'sound reasoning process.' " *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, ¶14, quoting *AAAA Ents., Inc. v. River Place Community Urban*

*Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990). This court has found that an "absence of reasoning suggests that [a] decision was '[f]ixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance, or given to making decisions thus; decisive but unreasoned.' " *State v. Corthell*, 3d Dist. Seneca No. 13-06-58, 2007-Ohio-4742, ¶ 24, quoting *Urmston v. City of North College Hill*, 114 Ohio App. 213, 216 (1st Dist.1961). Other courts have overruled orders of restitution where it was unclear from the record how the trial court determined the amount. *See State v. Radway*, 10th Dist. Franklin No. 06AP-1003, 2007-Ohio-4273, ¶ 14; *State v. Carson*, 2d Dist. Greene No. 2002-CA-73, 2003-Ohio-5958, ¶ 35.

{¶39} Here, the trial court, both at the sentencing hearing and in the judgment entry, pronounced the amount of restitution without giving any explanation as to how the court arrived at the figure. In our review of the record, this court is unable to replicate the math the trial court used to arrive at the amount it ordered. As this court held in *Corthell*, the absence of the court's reasoning under these circumstances suggests that the amount was arrived at arbitrarily. Therefore, as this court is unable to discern how the amount of restitution was

-18-

determined, the trial court abused its discretion for not explaining its reasoning process.[4]

{¶40} While the majority has recognized that the record here is insufficient to determine how the trial court calculated the amount of restitution it then continues to discuss various claims of the victim. This is outside the scope of our review. The Ohio Supreme Court has refused to speculate as to the possible line of reasoning a trial court may have utilized when it is otherwise unclear from the record. *State v. Francis*, 104 Ohio St.3d 490, 2004-Ohio-6894, ¶ 54. Even where no specific findings of fact or conclusions of law are required, the Court found that:

> [t]he trial court's failure to specify any reasons in its journal entry * * * severely hampers any consideration of whether an abuse of discretion occurred. * * * [T]he failure to explain the reasoning places significant obstacles in the way of meaningful appellate review when, as here, *so many variables are potentially relevant to a trial court's consideration.*

(Emphasis added.) *Id.* at ¶ 52. Even where there may be valid reasons for a trial court's determination, it

> would be speculative to comment on the propriety of [the other reasons] * * * because we have no way of knowing whether [those] issue[s] played any part in the trial court's bare ruling. We point out [these other reasons] *not for any substantive value* but merely as an

---

[4] This is not to say that this court cannot engage in a review of the trial court's reasoning when it is clear from the record as to how it arrived at the amount of restitution. *See State v. Johnson*, 3d Dist. Auglaize No. 2-98-39, 1999 WL 455301, *5 (June 30, 1999).

> additional feature that supports our decision to remand this cause to the trial court for a more thorough review.

(Emphasis added.) *Id.* at ¶ 54. Indeed, where the judgment entry fails to explain the trial court's reasoning, speculating on the basis for the courts judgment is "tantamount to issuing an advisory opinion on those matters which is something from which an appellate court should refrain." *Karmasu v. Bendolf*, 4th Dist. Scioto No. 93CA2160, 1994 WL 529961, *3 (Sept. 28, 1994); *see also Ntl. City Real Estate Servs. LLC v. Shields*, 11th Dist. Trumbull No. 2012-T-0076, 2013-Ohio-2839, ¶ 43.

{¶1} When determining whether a trial court has abused its discretion it is necessary for a reviewing court to know what the trial court considered in making its decision. We should not speculate as to what the trial court *may* have considered, and then rule on whether that *may* be proper. Here, the trial court issued a bare judgment ordering restitution in an amount that was determined in a way this court cannot replicate from the record. There was a great deal of evidence in the record, and many variables that the trial court may have considered when ordering restitution. Where, as here, we cannot determine from the record how the trial court determined the amount of restitution, we should remand and allow the trial court the opportunity to justify its judgment. Because we do not know upon what claims the trial court based its calculations, any analysis would

be based upon mere speculation.  Therefore, I do not think we should discuss any of them.