[Cite as *State v. Kiser*, 2016-Ohio-5307.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 15CA25 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| JOHN J. KISER, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 07/29/16** |

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Peter Galyardt, Assistant State Public Defender, Columbus, Ohio, for Appellant.

Gary D. Kenworthy, Circleville City Law Director, Circleville, Ohio, for Appellee.

McFarland, J.

{¶1} John J. Kiser, II appeals the judgment of the Circleville Municipal Court entered on September 6, 2015. Appellant was convicted of theft, a violation of R.C. 2913.02, after a jury trial. On appeal, Appellant asserts two assignments of error: (1) prosecutorial misconduct deprived him of a fair trial and due process of law; and (2) the trial court erred with the imposition of restitution for undamaged, reclaimed property. Having reviewed the record, we find no merit to his arguments. As such, we overrule both assignments of error and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

**{¶2}** Appellant was charged with a misdemeanor theft offense in violation of R.C. 2913.02(A)(1). The charge arose from events which occurred on April 18, 2013 at Walmart in Circleville, Ohio. On that date, Kylie Williams accidentally left her Apple iPhone 5 smartphone at the Walmart self-checkout counter before she left the store. Returning to the store shortly thereafter, Kylie saw Appellant and another person standing at the same self-checkout counter. Both denied seeing the phone.

**{¶3}** Don Barton, an asset protection officer with Walmart, testified at trial that Walmart surveillance tape demonstrated that Appellant had picked up the phone from the counter and placed it in his pocket. Barton later gave the video to the Pickaway County Sheriff's Office. Sgt. John Schleich of the sheriff's office testified he had viewed the surveillance video and observed Appellant, behind Kylie in the checkout line, placing the phone in his pocket. Schleich testified when he asked the secretaries in the office to find the video for trial, they were unable to locate it.

**{¶4}** Schleich testified he questioned Appellant days later at his home. Appellant admitted he placed the phone in his pocket but stated he thought it belonged to his step-daughter. He went into the girl's room, retrieved the phone,

and gave it to Schleich.  Schleich testified "He told me he didn't have a charger to fit it anyhow when I picked it up."

{¶5} Appellant testified on his own behalf at trial.  He admitted when he learned he was mistaken, he did not return the cell phone to Walmart or contact authorities.  Kylie Williams and Sgt. Schleich identified Appellant as the person on the surveillance video who picked up Kylie's phone.  Don Barton identified photographs, which he gave to the sheriff's office, of Appellant inside the store and in his vehicle in the parking lot at the relevant time.  The photographs were properly admitted into evidence.  Additional facts elicited from the witnesses will be set forth below, where relevant.

{¶6} A jury trial was scheduled for April 2, 2014.  Appellant failed to appear and a warrant for his arrest was issued.  Appellant was later arrested on the warrant and the trial was rescheduled for September 16, 2015.  Appellant was convicted and sentenced to 90 days in jail with 85 days suspended.  He was further ordered to a period of 12 months of probation and ordered to pay restitution.  Appellant has filed a timely appeal.

ASSIGNMENT OF ERROR ONE

"I. PROSECUTORIAL MISCONDUCT DEPRIVED JOHN KISER
OF HIS RIGHT TO A FAIR TRIAL AND DUE PROCESS."

STANDARD OF REVIEW

{¶7} "The test for prosecutorial misconduct is whether the conduct was

improper and, if so, whether the rights of the accused were materially prejudiced."
*State v. Canterbury,* 4th Dist. Athens No. 13CA34, 2015-Ohio-1926, at ¶ 16, quoting *State v. Purdin,* 4th Dist. Adams No. 12CA944, 2013-Ohio-22, ¶ 31; quoting *State v. Leonard*, 4th Dist. Athens No. 08CA24, 2009-Ohio-6191, ¶ 36; citing *State v. Smith,* 97 Ohio St.3d 367, 2002-Ohio-6659, 780 N.E.2d 221, ¶ 45, in turn citing *State v. Smith,* 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). "The 'conduct of a prosecuting attorney during trial cannot be grounds for error unless the conduct deprives the defendant of a fair trial.' " *Purdin* at ¶ 31; quoting *State v. Givens*, 4th Dist. Washington No. 07CA19, 2008-Ohio-1202, ¶ 28; quoting *State v. Gest,* 108 Ohio App.3d 248, 257, 670 N.E.2d 536 (8th Dist.1995). Accord *State v. Apanovitch,* 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). "Prosecutorial misconduct constitutes reversible error only in rare instances." *Purdin, supra*; quoting *State v. Edgington,* 4th Dist. Ross No. 05CA2866, 2006-Ohio-3712, ¶ 18; citing *State v. Keenan,* 66 Ohio St.3d 402, 406, 613 N.E.2d 203 (1993). The "touchstone analysis * * * is the fairness of the trial, not the culpability of the prosecutor. * * * The Constitution does not guarantee an 'error free, perfect trial.' " *Purdin* at ¶ 31; quoting *Leonard* at ¶ 36; quoting *Gest* at 257.

## LEGAL ANALYSIS

{¶8} Appellant first contends the State improperly testified to facts not in evidence. Appellant's defense was mistake of fact. He contends his evidence

would have been fairly contrasted against the victim's, the security guard's, and

the police officer's testimony, but for the prosecutor's improper remarks.

Appellant argues the prosecutor filled in the "holes" in the State's case with the

prosecutor's own testimony.  Appellant first directs us to this comment during the

State's opening statement:

> "And unfortunately it's taken a couple of years to get to this point in
> trial because the defendant, a couple of times this was set for trial and
> the defendant did not appear so it's kind of drug on."

{¶9} Appellant argues the fact that he did not appear at previous hearings

had no relevance to his guilt or innocence, and that it was a more prejudicial than

probative statement.  We begin by noting that Appellant failed to object to any of

the comments to which he now directs our attention on appeal.  Failure to object to

an alleged error waives all but plain error. *State v. Canterbury, supra,* at ¶ 15; *State

v. Keeley,* 4th Dist. Washington No. 11CA5, 2012-Ohio-3564, ¶ 28. See *State v.

D'Ambrosio,* 73 Ohio St.3d 141, 143-144, 652 N.E.2d 710 (1995).  Notice of

Crim.R. 52(B) plain error must be taken with the utmost caution, under exceptional

circumstances and only to prevent a manifest miscarriage of justice. *State v.

Rohrbaugh,* 126 Ohio St.3d 421, 2010-Ohio-3286, 934 N.E.2d 920, ¶ 6; *State v.

Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

To find plain error, the outcome of trial must clearly have been otherwise. *State v.

McCausland,* 124 Ohio St.3d 8, 2009-Ohio-5933, 918 N.E.2d 507, ¶ 15; *State v.

*Braden,* 98 Ohio St.3d 354, 2003-Ohio-1325, 785 N.E.2d 439, ¶ 50. As such, we will analyze the prosecutor's comments under the plain error standard of review.

{¶10} We have found no case on all fours with the one sub judice. However, *State v. Jones,* 2nd Dist. Greene No. 2005-CA-01, 2004-Ohio-5910, concerns a prosecutor's addressing a failure to appear during his opening statement. The prosecutor stated as follows at ¶ 5:

> "The Defendant is then placed in the county jail where he makes bond. He's out on bond. And during the course of this process the Defendant is scheduled to have a trial on this matter in August of 2004, specifically, I believe, August 31, 2004. The Defendant decides he doesn't want to come to trial, and he decides to leave, and fails to appear for his Court appearances and check-in, and has to be arrested by Court warrant to bring him here today."

In *Jones*, the prosecutor not only made the allegedly improper comment in opening, but also presented evidence on the sub-issue of Jones' failure to appear. The prosecutor called a pre-trial release specialist and cross-examined Jones' father about the failure to appear at trial. The trial court also instructed the jury about the fact that evidence that Jones failed to appear had been presented, and emphasized that Jones had not been charged with any crime involving his failure to appear.

{¶11} On appeal, Jones insisted that evidence of his failure to appear for his first scheduled trial date had no possible relevance to his guilt or innocence. However, the appellate court observed that Ohio courts have concluded that a defendant's failure to appear for trial may indicate consciousness of guilt. *Id.* at 11.

See *State v. Hagwood* (June 2, 1995), Lake App. No. 94-L-016 (holding that

evidence of a defendant's failure to appear for trial is admissible because it is

probative of consciousness of guilt and that the prejudicial effect of such evidence

does not substantially outweigh its probative value); *State v. Fain* (Aug. 22, 1990),

Summit App. No. 14578 (Flight from justice, and its analogous conduct, have

always been indicative of a consciousness of guilt. * * * ); *State v. Behun* (Sept.

20, 1985), Portage App. No. 1490, quoting McCormick, Evidence (2nd Ed.1972),

655, Section 271 (" 'Many acts of the defendant after the crime seeking to escape

the toils of the law are uncritically received as admissions by conduct constituting

circumstantial evidence of consciousness of guilt and hence of the fact of guilt

itself.  In this class are * * *, forfeiture of a bond by failure to appear * * *.' ").

> **{¶12}** In resolving the appeal, the *Jones* court held:

> "In light of the case law set forth above, we cannot say that the trial
> court abused its discretion in admitting evidence of Jones' failure to
> appear for trial and the forfeiture of his bond. *Id.* at 13. * * * In our
> view, [], the State was entitled to argue that Jones' failure to appear
> was tantamount to flight, concealment, or related conduct to avoid
> prosecution for his third domestic violence offense, and that it tended
> to show consciousness of guilt.  Although the jury was free to accept
> or reject this argument, Jones' failure to appear for trial was relevant
> to his guilt or innocence.  Moreover, we are unpersuaded that the
> probative value of testimony on the failure-to-appear issue was
> substantially outweighed by the danger of unfair prejudice.  Thus, the
> opening statement, trial testimony, and jury instruction were
> permissible. *Hagwood, supra*; *Fain, supra*; *Behun, supra; Collins,
> supra.*"

The *Jones* court further stated:

"[E]ven assuming arguendo that Jones had demonstrated some error, we would find it was harmless beyond a reasonable doubt. * * * In our view, however, the evidence of domestic violence is overwhelming, and any possible error in the prosecutor's opening statement, the testimony about Jones' failure to appear, and the jury instruction on the issue was harmless beyond a reasonable doubt."

{¶13} While we note that the State did not present evidence of Appellant's failure to appear in court earlier, we find it reasonable for the State to explain to the jury why an incident which had occurred in April 2013 was belatedly brought to trial in September 2015. And here, the prosecutor made no specific argument as in *Jones*, that Appellant's failure to appear was suggestive of his guilt. We also note that the trial court instructed the jury that the evidence did not include the opening statements or closing arguments of counsel. The trial court stated: "Mr. Kiser as you know and you've been told this several times, has been charged with one count of theft." The record shows no indication the jury was confused about the nature of Appellant's charge.

{¶14} Both the prosecution and the defense have wide latitude during opening and closing arguments. *Canterbury, supra,* at ¶ 22. *State v. Waters,* 4th Dist. Vinton No. 13CA693, 2014-Ohio-3109, at ¶ 33. In light of the other evidence presented, which we will discuss below, we do not find that plain error occurred.

{¶15} In addition to the testimony of Kylie Williams, her mother, Vickie Williams, Don Barton, and Sgt. Schleich, Appellant testified in his own defense.

He testified that he was at Walmart with his girlfriend's daughter Kierra.  When he came through the self-checkout, he saw the cell phone lying on the counter and he thought it looked just like Kierra's, so he picked it up and placed it in his pocket. He got home before he realized that Kierra had her own phone, so he placed the phone on a stand until Sgt. Schleich came for it.  He testified he really didn't know how to turn the phone on.  He testified "I think I told my step-daughter to try to see if she could figure out whose it was but I think it wouldn't, it wasn't charged or wouldn't come on or something so."

{¶16} Appellant testified he didn't return the phone because he was working as a contractor on a "big job," was "way behind" and working from "dusk til dawn."  He was also having problems with his girlfriend and was "kind of staying with another person here and there" and "it just slipped my mind.  I mean, I just forgot to take it back, I mean."  Appellant denied using the phone.

{¶17} On cross-examination, Appellant testified he did not recall Kylie asking them about the phone.  When asked if he was the person identified in the photograph, he testified "I couldn't tell you to be honest.  I mean, I don't know." He stated he wasn't sure he had plaid pants like the person in the photograph.

{¶18} Appellant testified when he left with Kierra, he didn't ask her if it was her phone because "[S]he leaves it lay around a lot and I just thought it would be funny to see how long it took before she realized it was missing. * * * Cause she

really freaks out when she loses her cell phone." He admitted she didn't "freak out" on the way home. Appellant realized when they arrived at home that the cell phone he picked up was not Kierra's. When asked if he looked at the phone he testified "It wasn't on. Or it wasn't on or I don't." He did not recall telling Sgt. Schleich that he "[d]idn't have a charger to fit it anyway." He testified he had "no clue" as to why all the content on the cell phone was removed before the phone was returned.

{¶19} On redirect, Appellant clarified he realized the cell phone wasn't Kierra's when he saw Kierra's phone in her hand. On recross, Appellant explained he didn't go immediately back to Walmart because "[W]e were on our way to do something. I think I might even have been on lunch break. I'm not sure." At that point, the State called Sgt. Schleich in rebuttal. He testified the incident occurred around 5:00 in the afternoon.

{¶20} Appellant next points to these statements made during the State's closing argument:

> "And if anyone has had cell phones before, it doesn't wipe the information out just because you deactivate it. That information is still there, it's just you can't use the cell phone and they take the sim card out or whatever they are using, that particular company. So I think that's probably the most significant factor is, if you're not going to keep the cell phone, if you don't intend to keep it from her possession, why would you wipe her information out? I think those are aspects you need to keep in mind when you deliberate this particular matter [be]cause those all go to the knowing element and the intent to deprive the owner in this case * * * of her cell phone."

{¶21} Appellant contends the statement about the impact of the phone companies' terminating coverage was, again, testimony by the prosecutor and nothing which came into evidence at trial. While the jury members could rely on their own experiences with cell phones, prosecutor testimony to that specific fact was improper. Further, Appellant argues the testimony was also inaccurate and misleading. If the phone was not in the physical possession of the phone company, as described here, that company could not remove the sim card.

{¶22} A prosecuting attorney has wide latitude to summarize the evidence and zealously advocate the State's position during closing argument. *Hunter, supra,* at ¶ 35. See *State v. Richey,* 64 Ohio St.3d 353, 362, 595 N.E.2d 915 (1992). The propriety of a specific remark by a prosecutor must not be judged in isolation, but in light of the tenor and context of the entire closing argument. See *State v. Slagle,* 65 Ohio St.3d 597, 607, 605 N.E.2d 916 (1992). *State v. Keenan* (1993), 66 Ohio St.3d 402, 613 N.E.2d 203. The court has held that wide latitude is appropriate for both sides in their closing "as to what the evidence has shown and what reasonable inferences may be drawn therefrom." *Lott,* 51 Ohio St.3d at 165, 555 N.E.2d 293, quoting *State v. Stephens*, 24 Ohio St.2d 76, 263 N.E.2d 773 (1970). Reversal is warranted only if the prosecutorial misconduct "permeates the entire atmosphere of the trial." *United States v. Warner* (C.A.6, 1992), 955 F.2d 441, 456. See, also, *State v. Tumbleson* (1995), 105 Ohio App.3d 693, 664 N.E.2d 1318.

{¶23} Vickie Williams testified she called Sprint the night the phone was stolen and advised them to "kill it," i.e. shut it down.  Kylie  testified after she left Walmart the day her phone was missing, she went directly to the Sprint store in Circleville.  She was hoping a Sprint representative could locate the phone and possibly turn it off.  Her phone had a locating device which she believed was turned on at the time her phone was missing, but when she arrived at the store, it was apparently not turned on.  Kylie advised Sprint to deactivate the phone.  When the phone was returned to her two weeks later, Kylie testified her contacts, cover page, text messages, and photos were completely erased.  Nothing was erased when she took it into Walmart with her the day of the alleged theft.  On cross-examination, Kylie admitted she was not familiar with Sprint's process for shutting down her phone.  Then on redirect, when Kylie was questioned if she could still get contact information off her phone once it was deactivated, she responded affirmatively.

{¶24} The prosecutor's argument about the cell phone suggested Appellant cleared the information out of the phone because he intended to keep it.  There was some testimony on this point from Kylie's mother.  The prosecutor's statement is in the nature of testimony to be properly admitted from a representative of the cell phone store or some other representative of the cell phone company with expertise in the operation of the cell phone and the sim card.  It appears Appellant's

argument that the prosecutor was actually testifying about a fact is a fair one. However, given other evidence of Appellant's guilt in the record, we do not find these comments rise to the level of plain error.

{¶25} The trial court instructed the jury on credibility. It is well-settled that the weight and credibility of evidence are to be determined by the trier of fact. *State v. Owens,* 2016-Ohio-176, - - N.E.3d. - -. *State v. Kirkland,* 140 Ohio St.3d 73, 2014-Ohio-1966, 14 N.E.3d 818, at ¶ 132. "A jury, sitting as the trier of fact, is free to believe all, part or none of the testimony of any witness who appears before it." *Owens, supra,* quoting *State v. West,* 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23. Appellant's explanation for his mistake and failing to return the phone were apparently not credible to the jurors.

{¶26} As set forth above, Appellant testified he picked up the phone and placed it in his pocket at the checkout. Kylie Williams testified she came back in while Appellant and his step-daughter were still there, and asked if they had seen the phone. They denied seeing a phone and Appellant denied recollection of being questioned by Kylie in the store. Again, the jury made a credibility determination.

{¶27} Officer Schweich testified when Appellant retrieved the phone, he went on to state that "it didn't even have a charger anyway." Appellant denied making this statement. Again, the jury was free to choose which testimony to believe.

{¶28} Appellant's reason for taking the phone in the first place seems nonsensical. But even if it were to be believed, his reason for not returning the phone promptly was not credible. Kylie testified she came immediately back into the store and questioned him. Why didn't Appellant simply pull the phone out of his pocket to check it at the time? Appellant's reason for not returning the phone also did not seem credible. He testified he was "too busy" and he might have even been on a lunch break. Yet, Sgt. Schleich testified the incident occurred around 5:00 p.m. Again, Appellant's credibility is lacking. In addition, Appellant's refusal to identify himself in the pictures taken at Walmart, when Kylie Williams and Sgt. Schleck clearly identified him, is incredible.

{¶29} Appellant next takes issue with these comments during rebuttal:

"Now while it[']s unfortunate that the tape is no longer available, keep in mind this happened over two years ago, but that's because the defendant failed to appear for trial two times and this case has been drug on for two years. Unfortunately, those things over a period of time get misplaced or they're over there someplace but can't be located so it's not that we're trying to hide anything."

* * *

"And then and maybe most importantly, if you didn't intend to keep the cell phone, why do you wipe the information out. Now whether they turn the phone off or not, you still have the ability to recover the information you got on there as far as your contacts, your emails, text messages and so forth. These were all gone. Her background's gone. Everything's wiped clean. If you didn't intend to keep the phone why do you wipe it clean. So I think all of those things you have to consider when you make the determination was this a mistake or was this an attempt to keep this property."

{¶30} In essence, these comments are similar to the ones previously discussed above. Again, we find it reasonable, not unfair or prejudicial, that the prosecutor would want to explain why it took the State of Ohio two years to bring a matter to trial and further, to explain why a key piece of evidence, the surveillance tape, was not offered into evidence. And while the prosecutor appears to be testifying to a factual matter regarding the workings of the cell phone and its sim card, based upon other evidence in the record, we do not find that the prosecutor's comments affected the outcome of the trial so as to allow a manifest miscarriage of justice.

{¶31} Finally, Appellant further contends that the State may not vouch for a victim's credibility. Because the verdict rested solely on Appellant's mistake defense, he argues the impact of vouching was instrumental and not curable through general jury instructions. The State commented during closing:

> "[The victim] I think has come up, testified to you very honestly at what she saw and what she didn't, there's no reason to doubt her testimony here."

{¶32} As a general matter, "[i]t is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness." *Canterbury, supra,* at ¶ 25, quoting *State v. Thompson,* 141 Ohio St.3d 254, 292, 2014-Ohio-4751, 23 N.E.3d 1096; quoting *State v. Williams,* 79 Ohio St.3d 1, 12, 679 N.E.2d 646

(1997). "Vouching occurs when the prosecutor implies knowledge of facts outside the record or places his or her personal credibility in issue." *Canterbury, supra*, at ¶ 31; *Topping, supra*, at 85; quoting *State v. Davis,* 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 232; citing *State v. Jackson,* 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 117. The prosecutor is however, permitted to fairly comment upon the testimony and evidence. *Topping, supra*; *State v. Mundt,* 115 Ohio St.3d 22, 2007-Ohio-4836, 873 N.E.2d 828, ¶ 119. While a prosecutor is not allowed to express an opinion concerning the credibility of evidence, they "can argue that the character, quality, or consistency of particular evidence or witnesses should be considered when assessing credibility." *Canterbury, supra,* at 33; *State v. Hostacky,* 8th Dist. Cuyahoga No. 100003, 2014-Ohio-2975, ¶ 47; citing *State v. Cody,* 8th Dist. Cuyahoga No. 77427, 2002-Ohio-7055, ¶ 35.

{¶33} Generally, prosecutorial misconduct will not provide a basis for overturning a criminal conviction, unless, on the record as a whole, the misconduct can be said to have deprived the appellant of a fair trial. *State v. Hunter,* 1st Dist. Hamilton Nos. C-140684, C-140704, and C-140717, 2016-Ohio-123, at ¶ 34. *State v. Lott,* 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990). Here, based upon a review of the record and considering the complained of statements within the context of the entire trial, we cannot conclude that any of the prosecutor's statements, in isolation or cumulatively, when reviewed under the plain error

standard, rose to the level of prosecutorial misconduct meriting a new trial. Appellant's credibility was contrasted not only with Kylie's, but also with Sgt. Schleich's. Appellant's credibility was found to be lacking. We cannot say the Appellant would not have been convicted in the absence of the cited statements.

**{¶34}** Further, in reaching this decision, we rely on the instructions given to the jury, which inform the jury that statements of counsel are not to be considered as evidence. See *Canterbury, supra,* at 23. For instance, the jury was instructed that "[t]he evidence does not include * * * the opening or closing arguments of counsel." Further, the jury was instructed that "[t]he opening statements and closing arguments of counsel are designed to assist you. They are not evidence." " 'A presumption always exists that the jury has followed the instructions given to it by the trial court.' " *Canterbury, supra*; *State v. Murphy,* 4th Dist. Scioto No. 09CA3311, 2010-Ohio-5031, ¶ 81; quoting *Pang v. Minch,* 53 Ohio St.3d 186, 559 N.E.2d 1313 (1990), paragraph four of the syllabus. Based on the trial court's instructions, as well as the other evidence in the record, we cannot say that the prosecutors' statements changed the outcome of the trial. For the foregoing reasons, we find Appellant has failed to demonstrate plain error.

ASSIGNMENT OF ERROR TWO

"II. THE TRIAL COURT ERRED WHEN IT IMPOSED
RESTITUTION FOR UNDAMAGED, RECLAIMED PROPERTY."

STANDARD OF REVIEW

{¶35} Generally, a decision to award restitution lies in a trial court's sound discretion and its decision will not be reversed on appeal absent an abuse of discretion. *State v. Shifflet,* 2015-Ohio-4250, 44 N.E.3d 966 (4th Dist.), at ¶ 49. *State v. Stump,* 4th Dist. Athens No. 13CA10, 2014-Ohio-1487, ¶ 11; see *State v. Dennis,* 4th Dist. Highland No. 13CA6, 2013-Ohio-5633, at ¶ 7; *State v. Jennings,* 8th Dist. Cuyahoga No. 99631, 2013-Ohio-5428,  at ¶ 40.  An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v. Perkins,* 3rd Dist. Marion No. 9-13-52, 2014-Ohio-2242, ¶ 10, citing *State v. Adams,* 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).  "Under this standard of review, an appellate court may not simply substitute its judgment for that of the trial court." *Perkins, supra*, quoting *State v. Adams*, 3rd Dist. Defiance No. 4-0916, 2009-Ohio-6863, ¶ 33.  "A trial court abuses its discretion in ordering restitution in an amount that was not determined to bear a reasonable relationship to the actual loss suffered." *State v. Portentoso,* 173 Ohio App.3d 297, 2007-Ohio-5490, 878 N.E.2d 76, (3rd Dist.), at ¶ 8 (internal citations omitted.). See also *State v. Bulstrom,* 2013-Ohio-3582, 997 N.E.2d 162, ¶ 19 (4th Dist.).

LEGAL ANALYSIS

{¶36} Appellant was ordered to pay a total of $250.84 in restitution to the victim.  Of that amount, $37.35 was compensation for the phone case which was

returned to Ms. Williams. Appellant argues because the phone case was returned to the victim undamaged, it was not a statutory "economic loss," and the trial court erred when it ordered restitution for that item. While Appellant did not formally object, counsel noted for the record that the victim received the original phone and Otterbox case. The State responds that the trial court clearly followed the dictates of the sentencing statutes. The State contends that both the original cell phone and Otterbox case were no longer of any use or value to the victim and she incurred out-of-pocket expenses of $250.84 as a direct and proximate result of the theft offense.

{¶37} R.C. 2929.28 provides the financial sanctions for misdemeanor offenses. If the court imposes restitution, the court shall determine the amount of restitution to be paid by the offender, and may base the amount of restitution it orders on an amount recommended by the victim. R.C. 2929.28(A)(1). The amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. *Id.* If the court decides to impose restitution, the court shall hold an evidentiary hearing on restitution if the amount of restitution is disputed. *Id.* The victim has the burden to prove by a preponderance of the evidence the amount of restitution sought from the offender. *Id.*

{¶38} Appellant was convicted of misdemeanor theft.  Pursuant to R.C. 2929.01(L), "economic loss" is defined as:

> "[A]ny economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes any loss of income due to lost time at work because of any injury caused to the victim, and any property loss, medical cost, or funeral expense incurred as a result of the commission of the offense.  'Economic loss' does not include non-economic loss or any punitive or exemplary damages."

{¶39} A trial court is under no duty to itemize or otherwise explain how it arrived at the amount of restitution it orders, so long as the trial court can discern the amount of restitution to a reasonable degree of certainty from competent, credible evidence in the record. *State v. Perkins,* 3rd Dist. Marion No. 9-13-52, 2014-Ohio-2242, at ¶ 23. See *State v. Didion,* 2007-Ohio-4494, 173 Ohio App.3d 130, (3rd Dist.), at ¶ 20.  Moreover, if an appellate court can discern from the record that the restitution order bears a reasonable relationship to the actual loss suffered by the victim, it will conclude that the trial court did not abuse its discretion. See *Hipsher,* 2012-Ohio-3206, at ¶ 12-14 (affirming the trial court's restitution order notwithstanding that the trial court did not itemize or explain how it arrived at the amount of restitution it ordered, because testimony in the record supported the amount of restitution).

{¶40} The victim's cell phone case was an "Otterbox" case.  The victim's mother testified she bought a new cell phone case at the same time she bought her

daughter a new phone, several days after the first one was missing.  She testified

the phone was replaced by insurance, but there was a $200.00 out-of-pocket

replacement fee, plus $37.35 for the Otterbox case.  Ms. Williams testified as

follows:

> Prosecutor:  All right.  Did you also buy a case for the phone at the time?
>
> Witness 1:   Yes.
>
> Prosecutor:  What type of case was that?
>
> Witness 1:   It was like the Otterbox case.
>
> Prosecutor:  Is that case on there the same one?
>
> Witness 1:   Yes.
>
> Prosecutor:  And since that time you used it on a different phone apparently?
>
> Witness 1:   No, I don't believe she has.

{¶41} While the victim in this case could use the old cell phone case for her

new phone, at the time her phone was stolen, she did not know it would ever be

returned.  It is fair to say that in 2016, many parents and children have cell phones

so that the children have the ability to contact parents in emergency situations or in

order to maintain necessary contact.  Kylie's mother purchased a new phone and

case just a few days after the incident.  Had Appellant returned the phone and case

in a timely manner, the victim's mother would not have incurred the additional

out-of-pocket expense.

{¶42} Other courts have noted that "voluntarily incurred expenses are not

compensable as restitution damages." *Portenso, supra,* at ¶ 9, quoting *State v.*

*Beam,* 5th Dist. Delaware No. 06CAA030018, 2007-Ohio-386.  See also *Shifflet,*

*supra,* at ¶ 59.  Despite the fact that the old phone case can be used, Appellant's

actions caused the victim's mother to involuntarily incur this expense.  For the

foregoing reasons, we find the trial court did not abuse its discretion with regard to

the award of restitution.  As such, Appellant's second assignment of error is also

overruled.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & Hoover, J.:    Concur in Judgment and Opinion.


For the Court,


BY: _____

Matthew W. McFarland, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**